**12-5002-cr**
*United States v. Lott*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM, 2013

ARGUED: OCTOBER 29, 2013
DECIDED: APRIL 24, 2014

No. 12-5002-cr

UNITED STATES OF AMERICA,
*Appellee,*

*v.*

CORY LOTT,
*Defendant-Appellant.*

————

Before: WALKER, CABRANES, and PARKER, *Circuit Judges.*

————

Cory Lott ("Lott") appeals from the 63-month sentence imposed in the United States District Court for the District of Vermont (William K. Sessions, III, *District Judge*), following his guilty plea for failure to register as a sex offender in violation of 18 U.S.C. § 2250(a). Lott contends that the district court should have dismissed the indictment because at the time of Lott's interstate

travel, the Sex Offender Registration and Notification Act ("SORNA"), Pub. L. No. 109-248, 120 Stat. 587 (2006) (codified at 18 U.S.C. § 2250 and 42 U.S.C. § 16911 *et seq.*), was not applicable to pre-Act offenders such as Lott. Lott also contends that the district court erroneously applied an eight-level sentencing enhancement under the United States Sentencing Guidelines ("U.S.S.G.") section 2A3.5(b)(1)(C). We reject Lott's arguments and AFFIRM the judgment of the district court.

————

DAVID L. MCCOLGIN (Michael L. Desautels, *on the brief*), Federal Public Defender's Office, District of Vermont, Burlington, VT, *for Defendant-Appellant.*

MICHAEL DRESCHER, Assistant United States Attorney (Tristram J. Coffin, United States Attorney for the District of Vermont, William B. Darrow and Gregory L. Waples, Assistant United States Attorneys, *on the brief*), Burlington, VT, *for Appellee.*

————

JOHN M. WALKER, JR. *Circuit Judge*:

Cory Lott ("Lott") appeals from the 63-month sentence imposed in the United States District Court for the District of Vermont (William K. Sessions, III, *District Judge*), following his guilty plea to failure to register as a sex offender in violation of 18 U.S.C. § 2250(a). Lott contends that the district court should have dismissed the indictment because at the time of Lott's interstate

travel, the Sex Offender Registration and Notification Act ("SORNA"), Pub. L. No. 109-248, 120 Stat. 587 (2006) (codified at 18 U.S.C. § 2250 and 42 U.S.C. § 16911 *et seq.*), was not applicable to pre-Act offenders such as Lott. Lott also contends that the district court erroneously applied an eight-level sentencing enhancement under the United States Sentencing Guidelines ("U.S.S.G.") section 2A3.5(b)(1)(C). We reject Lott's arguments and AFFIRM the judgment of the district court.

## BACKGROUND

In November 2001, Lott was convicted in New York of attempted sexual abuse and sentenced to one year probation. As a result of his conviction he was required under state law to register as a sex offender in New York, but he failed to do so. In 2006, Congress passed SORNA, which requires sex offenders to register in each jurisdiction in which they reside, work, or go to school; however, SORNA does not specify whether this requirement pertains to offenders whose offenses predate SORNA's 2006 effective date.

Lott eventually moved to South Carolina, where in 2009 he was convicted under state law for failure to register. In 2010, Lott moved to Vermont and failed to register, as the government alleges was required by SORNA. In November 2010, Lott sexually assaulted a 13-year-old girl and fled the state. In February 2011, Vermont obtained an arrest warrant for Lott on a charge of lewd and lascivious conduct in connection with this assault. In September

2011, a federal grand jury returned an indictment alleging that Lott had traveled to Vermont in late 2010 without registering as a sex offender, in violation of SORNA, 18 U.S.C. § 2250(a). Twelve days later, Lott pled guilty in Vermont state court to two misdemeanor prohibited acts counts based on the assault. He was sentenced to six to twelve months' imprisonment.

Lott then moved to dismiss the federal indictment, raising a number of challenges to the validity of SORNA as applied. The district court denied the motion to dismiss. On August 6, 2012, Lott pled guilty pursuant to a written plea agreement that preserved his right to appeal his challenges to the application of SORNA. At sentencing, the district court calculated the sentencing guidelines range to be 63 to 78 months, including an eight-level enhancement pursuant to U.S.S.G. § 2A3.5(b)(1)(C) for committing a sex offense against a minor while he was in failure-to-register status. Defense counsel objected to the sentencing enhancement. The district court overruled defense counsel's objections and imposed a sentence of 63 months' imprisonment.

Lott appeals the constitutionality of SORNA's registration requirement to conduct that preceded SORNA's effective date and also appeals the application of the eight-level sentencing enhancement.

## DISCUSSION

I.  *The Retroactivity of SORNA*

    A.  *SORNA*

SORNA was enacted to "establish[] a comprehensive national system for the registration of [sex] offenders." 42 U.S.C. § 16901. The Act "requires those convicted of certain sex crimes to provide state governments with (and to update) information, such as names and current addresses, for inclusion on state and federal sex offender registries." *Reynolds v. United States*, 132 S. Ct. 975, 978 (2012). "The Act makes it a crime for a person who is 'required to register' under the Act and who 'travels in interstate or foreign commerce' to knowingly 'fai[l] to register or update a registration.'" *Id.* (alteration in original) (quoting 18 U.S.C. § 2250(a)).

The statute does not specify whether its registration requirements apply retroactively to sex offenders who are convicted prior to SORNA's enactment. However, SORNA section 113(d)[1] gives the Attorney General the "authority to specify the applicability of the [registration] requirements . . . to sex offenders convicted before the enactment" of SORNA. In 2012, the Supreme Court, resolving a disagreement between circuit courts,[2] and construing

---

[1] 42 U.S.C. § 16913(d).

[2] Six Circuits had held that SORNA's registration requirements did not apply to pre-Act offenders unless and until the Attorney General so specified. *United States v. Johnson*, 632 F.3d 912, 922-927 (5th Cir. 2011); *United States v. Valverde*, 628 F.3d 1159, 1161-62 (9th Cir. 2010); *United States v. Cain*, 583 F.3d 408, 414-19 (6th Cir. 2009); *United States v. Hatcher*,

section 113(d), held in *Reynolds* that SORNA's "registration requirements do not apply to pre-Act offenders until the Attorney General specifies that they do apply."[3] 132 S. Ct. at 978.

The Attorney General has issued three sets of regulations that arguably adequately specify that SORNA's registration requirements apply to pre-Act offenders: the "Interim Rule" in February 2007, 72 Fed. Reg. 8,894 (Feb. 28, 2007); the Sentencing, Monitoring, Apprehending, Registering, and Tracking ("SMART") Guidelines in July 2008, 73 Fed. Reg. 38,030 (July 2, 2008); and the "Final Rule" in December 2010, 75 Fed. Reg. 81,849 (Dec. 29, 2010). The Final Rule postdates Lott's travel to Vermont and is therefore not applicable.

### B. Validity of SMART Guidelines

Lott challenges the validity of both the Interim Rule and the SMART Guidelines. Because we find that the SMART Guidelines

---

560 F.3d 222, 226-229 (4th Cir. 2009); *United States v. Dixon*, 551 F.3d 578, 582 (7th Cir. 2008), *rev'd on other grounds*, 560 U.S. 438 (2010); *United States v. Madera*, 528 F.3d 852, 857-59 (11th Cir. 2008) (per curiam). Five Circuits, including our own, had held that the registration requirements applied from the date of the Act's enactment, and prior to any such specification, at least with respect to pre-Act offenders who had already registered under state law. *United States v. Fuller*, 627 F.3d 499, 506 (2d Cir. 2010); *United States v. DiTomasso*, 621 F.3d 17, 25 (1st Cir. 2010); *United States v. Shenandoah*, 595 F.3d 151, 163 (3d Cir. 2010); *United States v. Hinckley*, 550 F.3d 926, 932 (10th Cir. 2008); *United States v. May*, 535 F.3d 912, 918-19 (8th Cir. 2008).

[3] *Reynolds* did not address the question of whether the Attorney General had, in fact, taken any action "specif[ying]" SORNA's retroactivity.

validly extended SORNA's applicability to pre-Act offenders, we need not decide whether the Interim Rule had the same effect.

As to the SMART Guidelines' validity, Lott's argument is twofold. First, he argues that the SMART Guidelines are interpretive rules rather than substantive rules because the Attorney General's authority to issue the guidelines flows from SORNA section 112(b)[4] and because the Attorney General conceded this point. Substantive rules independently have the force of law, but interpretative rules can only clarify existing law. *See United States v. Yuzary*, 55 F.3d 47, 51 (2d Cir. 1995). If Lott is correct, then the SMART Guidelines cannot validly specify that SORNA's registration requirements apply to pre-Act offenders. Second, Lott claims that even if the SMART Guidelines were issued pursuant to the Attorney General's substantive rulemaking authority, the Attorney General did not comply with the notice-and-comment requirement of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553. We disagree with both of these arguments.

The SMART Guidelines were an act of substantive rulemaking. The notice proposing the guidelines specifically stated: "These proposed guidelines carry out a statutory directive to the Attorney General, in section 112(b) of SORNA (42 U.S.C. § 16912(b)) to issue guidelines to interpret and implement SORNA." 72 Fed. Reg. 30,210 (May 30, 2007). The reference to the Attorney General's

---

[4] 42 U.S.C. § 16912(b).

section 112(b) authority to "interpret and implement" SORNA does not support Lott's conclusion that the guidelines are interpretative. Interpretive rules "do not create rights, but merely clarify an existing statute or regulation." *N.Y. State Elec. & Gas Corp. v. Saranac Power Partners, L.P.*, 267 F.3d. 128, 131 (2d Cir. 2001) (internal quotation marks omitted). Substantive rules, however, "create new law, right[s], or duties." *Id.* Substantive rules "*implement* the statute." *Chrysler Corp. v. Brown*, 441 U.S. 281, 302-03 (1979) (emphasis added). *See also Am. Broad. Cos., Inc. v. FCC*, 682 F.2d 25, 32 (2d Cir. 1982) ("The phrase 'substantive rules adopted as authorized by law' refers, of course, to rules issued by an agency to implement statutory policy."). By specifying that the Attorney General has the power to "implement" SORNA, section 112(b) plainly gives the Attorney General the authority to issue substantive rules.

Moreover, section 112(b)'s implementation power incorporates section 113(d)'s authorization to the Attorney General to "specify the applicability of the requirements of" SORNA to pre-Act offenders. 42 U.S.C. § 16913(d); *see United States v. Whitlow*, 714 F.3d 41, 46 (1st Cir. 2013) ("§ [112](b)'s interpret-and-implement authority appears to subsume the narrower power to make retroactivity determinations . . . ."); *United States v. Stevenson*, 676 F.3d 557, 563-64 (6th Cir. 2012) ("[E]ven if the SMART Guidelines were solely promulgated under § [112](b), the Attorney General still had authority to address the retroactivity of SORNA in substantive

rules pursuant to § [112](b), because § [112](b) incorporates by reference § [113](d).").

And finally, the proposed SMART Guidelines specifically reference section 113(d) in their discussion of retroactivity. *See* 72 Fed. Reg. at 30,212 (stating that the regulation making SORNA's requirements apply to all sex offenders were issued "pursuant to the authority under SORNA section 113(d)"). The APA requires only that a proposed rule provide some notice of the legal authority for that rule—it does not prescribe the form that notice must take. 5 U.S.C. § 553(b)(2); *see Stevenson*, 676 F.3d at 563 ("The APA does not require that the proposed rule cite the relevant legal authority in a certain location, but rather requires just that notice must be given for any proposed rule.").

Lott also argues that the Attorney General conceded that the SMART Guidelines are interpretive rules. Lott relies on the fact that the Attorney General, after publishing the SMART Guidelines, found it necessary to publish the Final Rules. He further relies on the fact that at the time of publication of the SMART Guidelines, the Attorney General took the position that SORNA applied to pre-Act offenders by force of the statute.

The publication of the Final Rule was not, however, a concession by the Attorney General that the earlier rules were invalid. As noted, in February 2007, the Attorney General issued the Interim Rule purported to make SORNA effective immediately to all

sex offenders, including those convicted of sex offenses prior to SORNA's enactment. In May 2007, the SMART Guidelines were published in proposed format, and after a notice and comment period, they were published in final format in July 2008. The SMART Guidelines provide jurisdictions[5] with guidance and advice regarding the administration and implementation of SORNA. 73 Fed. Reg. 38,030. In August 2010, the Attorney General published the Final Rule to "eliminate any possible uncertainty or dispute concerning the scope of SORNA's application," without conceding that the Interim Rule or the SMART Guidelines were invalid. 75 Fed. Reg. at 81,850.

Nor does the Attorney General's position that Congress itself had decreed that SORNA applied to pre-Act offenders constitute a concession that the SMART Guidelines are interpretive. Such a concession cannot be gleaned from the fact that the Attorney General erroneously believed that the earlier statute accomplished what the later SMART Guidelines did explicitly. The Attorney General was not alone in this belief. Until the Supreme Court's decision in *Reynolds*, five circuits, including ours, held that SORNA's registration requirements already applied to pre-act offenders. *See Reynolds*, 132 S. Ct. at 980.

---

[5] The term "jurisdiction" means any of the following: a state, the District of Columbia, the Commonwealth of Puerto Rico, Guam, American Samoa, the Northern Mariana Islands, the United States Virgin Islands, and Indian Tribes that elected to be registration jurisdictions. 42 U.S.C. § 16911.

As to Lott's second argument that the SMART Guidelines failed to satisfy the notice-and-comment requirements of the APA, we join several of our sister circuits that have found that they did. *See Whitlow*, 714 F.3d at 45 (1st Cir. 2013); *United States v. Mattix*, 694 F.3d 1082, 1084 (9th Cir. 2012) (per curiam); *United States v. Trent*, 654 F.3d 574, 581 (6th Cir. 2011).[6]

Lott claims that because the Attorney General erroneously believed that SORNA already applied retroactively, public comments regarding retroactive application were not appropriately considered, violating 5 U.S.C. § 553.[7] But the record shows that the public was given the opportunity to comment and that the Attorney General gave consideration to these comments.

"Notice requirements are designed (1) to ensure that agency regulations are tested via exposure to diverse public comment, (2) to ensure fairness to affected parties, and (3) to give affected parties an opportunity to develop evidence in the record to support their objections to the rule and thereby enhance the quality of judicial

[6] Other circuits have found that the Interim Rule validly extended SORNA's applicability to pre-Act offenders as the Attorney General had "good cause" to promulgate the Interim Rule without notice and comment as required by the APA. *See United States v. Dean*, 604 F.3d 1275, 1276 (11th Cir. 2010); *United States v. Gould*, 568 F.3d 459, 470 (4th Cir. 2009).

[7] Section 553(c) states: "After notice required by this section, the agency shall give interested persons an opportunity to participate in the rule making through submission [of comments] . . . . After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose."

review." *Int'l Union, United Mine Workers of Am. v. Mine Safety & Health Admin.*, 407 F.3d 1250, 1259 (D.C. Cir. 2005). "[T]he opportunity to comment is meaningless unless the agency responds to significant points raised by the public." *Sherley v. Sebelius*, 689 F.3d 776, 784 (D.C. Cir. 2012) (quoting *Home Box Office, Inc. v. FCC*, 567 F.2d 9, 35-36 (D.C. Cir. 1977) (internal quotation marks omitted).

The SMART Guidelines were published in proposed form on May 30, 2007. 72 Fed. Reg. 30,210. After a notice-and-comment period that ended on August 1, 2007, they were published in final form on July 2, 2008. 73 Fed. Reg. 38,030. Approximately 275 comments were received on the proposed guidelines, including concerns about "provisions of the guidelines that require that jurisdictions apply the SORNA requirements 'retroactively' to certain categories of offenders whose sex offense convictions predate the enactment of SORNA." *Id.* at 38,030-31. Of particular relevance here, the commenters were concerned (1) that "Congress was simply wrong in enacting SORNA[] . . . and that the Attorney General should mitigate the resulting harm" and (2) that there would be practical "difficulties in finding older convictions and determining whether registration is required for them." *Id.* at 38,031. The Attorney General specifically addressed both of these concerns. In response to the policy concerns, he concluded that "the public safety concerns presented by sex offenders are much the same, regardless of when they were convicted," and he declined "to second-guess the

legislative policies" SORNA embodies. *Id.* at 38,036. In response to the practical concerns, the proposed guidelines were modified to clarify that jurisdictions could rely on their usual methods of searching criminal histories. *Id.* at 38,043.

II.  *Constitutional Claims*

Turning briefly to Lott's broader arguments regarding SORNA's constitutionality, we have considered them and found them to be without merit. In *United States v. Guzman*, 591 F.3d 83 (2d Cir. 2010), we rejected claims that SORNA violates the non-delegation doctrine, the Tenth Amendment, and the Ex Post Facto Clause. There is no superseding authority that causes us to revisit that holding. SORNA does not violate the Commerce Clause either. In *Guzman*, we found that SORNA was "a proper congressional exercise of the commerce power." *Id.* at 90. Since then, the Supreme Court has spoken further on the limitations of Congress's power to regulate commerce. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 132 S. Ct. 2566, 2586-90 (2012). We recently held, however, that the constitutionality of SORNA, as applied to an interstate traveler such as Lott, "remains unaffected by any limitations on Congress's Commerce Clause power that may be found in *NFIB*." *United States v. Robbins*, 729 F.3d 131, 132 (2d Cir. 2013), *cert. denied*, 134 S.Ct. 968 (2014).

*III.    The Applicability of the Sentencing Enhancement*

Because we have determined that Lott was in failure-to-register status, we turn to Lott's argument that the district court committed procedural error by imposing an eight-level enhancement, pursuant to U.S.S.G. § 2A3.5(b)(1)(C), for commission of a "sex offense" while in failure-to-register status. "We review a district court's imposition of sentence under an abuse-of-discretion standard. The abuse-of-discretion standard incorporates *de novo* review of questions of law (including interpretation of the Guidelines) and clear-error review of questions of fact." *United States v. Salim*, 549 F.3d 67, 72 (2d Cir. 2008) (citations omitted) (internal quotation marks omitted).

The basis for the imposition of the enhancement was that Lott was charged with "lewd and lascivious conduct"—a "sex offense" under SORNA—for his uncontested attempt to force sexual contact with a 13-year-old girl. He ultimately pled guilty to "prohibited acts," which is not categorically a sex offense.

Section 2A3.5(b)(1)(C) states: "If, while in a failure to register status, the defendant committed . . . a sex offense against a minor, increase by **8** levels." In the application note for this section, "'Sex offense' has the meaning given that term in 42 U.S.C. § 16911(5)." Section 16911(5) defines "sex offense" to include "a criminal offense that has an element involving a sexual act or sexual contact with

another" and "a criminal offense that is a specified offense against a minor." 42 U.S.C. § 16911(5)(A)(i)-(ii).

Lott argues that the enhancement is inapplicable to mere *commission* of a sex offense absent a conviction for that offense. And because Lott pled to the misdemeanor act of prohibited acts, which he argues is not categorically a sex offense, the enhancement was wrongly applied. We disagree. Neither 42 U.S.C. § 16911(5) nor U.S.S.G. § 2A3.5(b)(1)(C) require a sex offense *conviction* in order to apply an eight-level increase pursuant to section 2A3.5; conduct amounting to a "sex offense" is enough.[8] "Neither the Guidelines nor SORNA make any reference to a conviction. To the contrary, the Guidelines specify that the enhancement is triggered by the *commission* of an act."[9]

---

[8] Because the language of the guideline is clear that a conviction is not necessary for the enhancement, there is no need for us to perform the categorical/modified categorical approach to determine if Lott's prohibited acts conviction qualifies as a "sex offense." *See generally United States v. Beardsley*, 691 F.3d 252, 259 (2d Cir. 2012) (describing these approaches).

[9] To support his argument that conviction is required, Lott also points to U.S.S.G. § 1B1.1, cmt. 1(H), which states that "'[o]ffense' means the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct)." But nothing in § 1B1.3, which describes "relevant conduct," requires conviction.

Lott's uncontested forcible sexual contact with a 13-year-old girl is a sex offense under section 16911(5). Therefore the district court did not commit error by imposing the enhancement.[10]

**CONCLUSION**

For the reasons stated above, we AFFIRM the judgment of the district court.

---

[10] Because the conduct constituting a sex offense was uncontested in this instance, we need not consider what lower level of proof might suffice for application of the enhancement, absent a conviction.