# United States Court of Appeals
## For the Eighth Circuit

_____

No. 14-2829

_____

United States of America

*Plaintiff - Appellee*

v.

Quinton D. Manning

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - El Dorado

_____

Submitted: February 9, 2015
Filed: May 22, 2015

_____

Before LOKEN, SMITH, and COLLOTON, Circuit Judges.

_____

LOKEN, Circuit Judge.

Quinton Manning was arrested in El Dorado, Arkansas, and charged with failing to register as a sex offender in violation of 18 U.S.C. § 2250, part of the federal Sex Offender Registration and Notification Act (SORNA). The district court[1] denied

---

[1]The Honorable Harry F. Barnes, United States District Judge for the Western District of Arkansas.

Manning's motion to dismiss the indictment. Manning entered a conditional guilty plea and now appeals the denial of his motion to dismiss, raising frequently-litigated constitutional and statutory issues. Reviewing *de novo*, we affirm.

Enacted in 2006, SORNA provides for the registration of a sex offender -- defined as "an individual who was convicted of a sex offense" -- and requires that every jurisdiction maintain a sex offender registry. 42 U.S.C. §§ 16911(1), 16912. Manning's prior sex offense was a March 1997 sexual assault conviction in Texas. The conviction required him to register as a sex offender in Texas after his release. SORNA requires a sex offender to register in each jurisdiction where he or she resides and update the registration within three business days of a "change in name, residence, employment, or student status." 42 U.S.C. § 16913(a) and (c). Manning failed to register in Arkansas when he moved there in late 2010 or early 2011. SORNA provides that a sex offender who travels in interstate commerce and knowingly fails to register shall be fined or imprisoned not more than 10 years, or both. 18 U.S.C. § 2250(a). That is the offense Manning is appealing.

SORNA did not clarify whether its registration requirements apply to sex offenders such as Manning whose sex offense convictions were prior to SORNA's enactment. Rather, SORNA gave the Attorney General "the authority to specify the applicability of the requirements of this subchapter to sex offenders convicted before the enactment of this chapter . . . and to prescribe rules for the registration of any such sex offenders." 42 U.S.C. § 16913(d).

**A.** On appeal, Manning raises two constitutional issues that are controlled by prior Eighth Circuit decisions. First, he argues that delegating to the Attorney General the legislative power to determine the individuals to whom SORNA applies violates the constitutional nondelgation doctrine that is "rooted in the principle of separation of powers." United States v. Kuehl, 706 F.3d 917, 919 (8th Cir. 2013). We rejected this contention in Kuehl, like all circuits that have considered the issue. Id. at 920.

Second, he argues that SORNA violates the Commerce Clause as construed by the Supreme Court in National Federation of Independent Business v. Sebelius, 132 S. Ct. 2566, 2587-91 (2012). A panel of this court recently ruled that SORNA's constitutionality under the Commerce Clause, repeatedly upheld prior to this recent decision, remains intact. United States v. Anderson, 771 F.3d 1064, 1069-70 (8th Cir. 2014), cert. denied,135 S. Ct. 1575 (2015); accord United States v. Lott, 750 F.3d 214, 220 (2d Cir.), cert. denied, 135 S. Ct. 253 (2014).

"A panel of this Court is bound by a prior Eighth Circuit decision unless that case is overruled by the Court sitting en banc." United States v. Wright, 22 F.3d 787, 788 (8th Cir. 1994). Accordingly, these arguments are foreclosed by Eighth Circuit precedent.

**B.** Manning's remaining argument on appeal is grounded in the rulemaking provisions of the federal Administrative Procedure Act (APA), 5 U.S.C. § 553. It has been rejected by at least four of our sister circuits, but we have not yet addressed it.

Following SORNA's enactment, the Attorney General took three actions declaring that the Act's registration requirements apply to those whose sex offender convictions pre-dated the statute. The first was an "Interim Rule," published on February 28, 2007. 72 Fed. Reg. 8894, 8897. Second, the Attorney General published Sentencing, Monitoring, Apprehending, Registering, and Tracking (SMART) Guidelines, 72 Fed. Reg. 30,210 (May 30, 2007), which became effective on August 1, 2008, 73 Fed. Reg. 38,030 (July 2, 2008). Third, the Attorney General promulgated a Final Rule which became effective on January 28, 2011. 75 Fed. Reg. 81,849 (Dec. 29, 2010).

Throughout this period, the Attorney General took the position that no agency action was needed to make SORNA registration applicable to prior sex offenders, an issue that divided the circuit courts. The Supreme Court resolved this conflict in

Reynolds v. United States, 132 S. Ct. 975, 978 (2012), concluding that the plain language of 42 U.S.C. § 16913(d) means that the "registration requirements do not apply to pre-Act offenders until the Attorney General specifies that they do apply." The Court noted the Attorney General's Interim Rule, SMART Guidelines, and Final Rule but declined to decide "[w]hether the Attorney General's Interim Rule sets forth a valid specification." Id. at 984.

In United States v. Brewer, 766 F.3d 884, 890 (8th Cir. 2014), a panel of this court held that the Interim Rule was invalid because the Attorney General did not comply with the notice and comment requirements of APA substantive rule-making, another issue that has divided the circuits. Our decision in Brewer provides no relief for Manning because his failure-to-register offense was committed when he moved to Arkansas in late 2010 or early 2011, long after the SMART Guidelines became effective. Accordingly, to prevail, Manning must persuade us that SORNA's registration requirements do not apply to him because the SMART Guidelines were invalidly promulgated. In United States v. Knutson, 680 F.3d 1021, 1023 (8th Cir. 2012), the same situation was presented, but the SMART Guidelines issue was not raised or decided.

Manning argues that the SMART Guidelines were not a proper exercise of the Attorney General's § 16913(d) authority to specify whether SORNA's registration requirements apply to pre-Act offenders. The Guidelines proposal relied on the Attorney General's authority in § 16912(b) to "issue guidelines and regulations to interpret and implement this subchapter," Manning emphasizes, not on the § 16913(d) authority to specify. See 72 Fed. Reg. 30,210, 30,212 (May 30, 2007). The SMART Guidelines did not purport to be an exercise of the Attorney General's § 16913(d) authority, Manning argues, just a reaffirmation of the now-invalidated Interim Rule. Like our sister circuits, we reject this contention.

-4-

Section 16912(b) "unambiguously gives the Attorney General the authority to make substantive rules on how to implement SORNA." United States v. Stevenson, 676 F.3d 557, 564 (6th Cir.), cert. denied, 133 S. Ct. 168 (2013). The authority in § 16912(b) to "interpret and implement this subchapter" encompasses the narrower power in § 16913(d) to apply SORNA's registration requirements to pre-enactment sex offenders. See United States v. Whitlow, 714 F.3d 41, 46 (1st Cir. 2012), cert. denied, 134 S. Ct. 287 (2013); Lott, 750 F.3d at 218. The APA requires only that a proposed rule provide some notice of its legal authority for that rule so the public has sufficient opportunity to comment. See 5 U.S.C. § 553(b)(2); Lott, 750 F.3d at 218; Whitlow, 714 F.3d at 46; Stevenson, 676 F.3d at 563. The Guidelines proposal included a discussion of "retroactivity" and specifically referred to the Attorney General's authority under § 16913(d). 72 Fed. Reg. at 30,212 ("SORNA's requirements apply to all sex offenders, including those whose convictions predate the enactment of the Act."). That the discussion referred to the prior Interim Rule does not mean the Guidelines were not an independent exercise of rulemaking authority. Thus, "[t]he SMART Guidelines were an act of substantive rulemaking." Lott, 750 F.3d at 217; see generally Chrysler Corp. v. Brown, 441 U.S. 281, 302 & n.31 (1979).[2]

Manning further argues that, if the SMART Guidelines were an exercise of substantive rulemaking authority, they did not comply with the APA's notice-and-comment requirements because the Attorney General did not provide an opportunity to comment on the substantive retroactivity provisions and, to the extent comments were received, did not explain how "significant problems regarding retroactivity" were resolved. This contention seriously understates the quantity of public comments

---

[2]Because the Attorney General chose to proceed by substantive rule-making in exercising his authority to "specify," we need not consider whether the Guidelines would be an invalid exercise of the authority to specify had he proceeded by interpretive rule. See Perez v. Mortgage Bankers Ass'n, 135 S. Ct. 1199, 1203-04 (2015).

concerning the application of SORNA's requirements to pre-enactment sex offenders, and the Attorney General's substantive response to those comments. <u>See</u> 73 Fed. Reg. 38,030, 38,031, 38,035-36 (July 2, 2008). We agree with our sister circuits that the Attorney General satisfied the notice and comment requirements of APA rulemaking. <u>See Lott</u>, 750 F.3d at 219-20; <u>Whitlow</u>, 714 F.3d at 47; <u>Stevenson</u>, 676 F.3d at 565; <u>accord</u> <u>United States v. Mattix</u>, 694 F.3d 1082, 1084-85 (9th Cir. 2012), <u>cert. denied</u>, 134 S. Ct. 139 (2013).

For these reasons, we conclude that the Attorney General exercised his authority under § 16913(d) "to specify the applicability of [SORNA's] requirements to sex offenders convicted before the enactment of this chapter" no later than August 1, 2008, the effective date of the SMART Guidelines. Accordingly, the district court correctly denied Manning's motion to dismiss the indictment.

The judgment of the district court is affirmed.

_____