*13-3679-cr*
*United States v. Gundy*

# United States Court of Appeals
## FOR THE SECOND CIRCUIT

August Term, 2014

(Argued: October 28, 2014      Decided: September 14, 2015)

Docket No. 13-3679-cr

UNITED STATES OF AMERICA,

*Appellant*,

—v.—

HERMAN AVERY GUNDY, A/K/A HERMAN GRUNDY,

*Defendant-Appellee*.

B e f o r e :

KATZMANN, *Chief Judge*, HALL and CARNEY, *Circuit Judges*.

The United States appeals from orders of the United States District Court for the Southern District of New York (J. Paul Oetken, *Judge*) dismissing the January 7, 2013 Indictment against Defendant-Appellee Herman Avery Gundy and denying its motion for reconsideration of the dismissal. The federal Sex Offender Registration and Notification Act makes it a crime for a person who is

"required to register" under the Act to travel interstate and then knowingly fail to register or update his or her registration. 18 U.S.C. § 2250(a). The District Court dismissed the Indictment for failure to state an offense on the ground that the interstate travel charged in the Indictment occurred before Gundy was required to register. We hold that Gundy was a person "required to register" within the meaning of the Act from before the time of the charged interstate travel, and thus we REVERSE the District Court's order of dismissal. We REMAND the cause to the District Court for reinstatement of the Indictment and for further proceedings.

_____

BRENDAN F. QUIGLEY, Assistant United States Attorney (Emil J. Bove III and Justin Anderson, Assistant United States Attorneys, *on the brief*), *for* Preet Bharara, United States Attorney for the Southern District of New York, New York, NY, *for Appellant*.

SARAH BAUMGARTEL (Yuanchung Lee, *on the brief*), Federal Defenders of New York, Inc., Appeals Bureau, New York, NY, *for Defendant-Appellee*.

_____

SUSAN L. CARNEY, *Circuit Judge*:

The United States appeals from orders of the United States District Court for the Southern District of New York (J. Paul Oetken, *Judge*) dismissing the January 7, 2013 Indictment against Defendant-Appellee Herman Avery Gundy and denying its motion for reconsideration of the dismissal. The Indictment charged Gundy with a violation of the Sex Offender Registration and Notification Act ("SORNA" or the "Act"), which makes it a federal crime for a

2

person who (1) "is required to register under [SORNA]," and (2) "travels in interstate or foreign commerce," to then (3) "knowingly fail[] to register or update a registration as required by [SORNA]." 18 U.S.C. § 2250(a); *see Carr v. United States*, 560 U.S. 438, 446 (2010) (explaining that the elements must be satisfied in sequence). This case requires us to decide when a person is "required to register" within the meaning of SORNA. The District Court, reasoning that Gundy was not "required to register" until shortly before his release from custody and thus after the interstate travel charged in the Indictment, held that Gundy could not have violated § 2250(a). Because we disagree with the District Court's conclusion that Gundy was not "required to register" until after the charged interstate travel, we REVERSE the District Court's order dismissing the Indictment and REMAND the cause to the District Court for reinstatement of the Indictment and for further proceedings.

## BACKGROUND

**A. The Sex Offender Registration and Notification Act**

The federal government has set national standards for sex offender registration and notification since 1994, when it first required states to adopt

registration laws as a condition for receiving federal law enforcement funds. *See* Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, Pub. L. No. 103-322, § 170101, 108 Stat. 2038, 2038-42 (1994) (repealed 2006); *see also* Final Guidelines, 73 Fed. Reg. 38,030 (July 2, 2008). The Sex Offender Registration and Notification Act, which was enacted on July 27, 2006, *see* Pub. L. No. 109-248, 120 Stat. 590, was designed to improve the existing system by "mak[ing] more uniform what had," until that point, "remained a patchwork of federal and 50 individual state registration systems, with loopholes and deficiencies that had resulted in an estimated 100,000 sex offenders becoming missing or lost." *United States v. Kebodeaux*, 133 S. Ct. 2496, 2505 (2013) (citations and internal quotation marks omitted). Among other things, the Act created the National Sex Offender Registry, *see* 42 U.S.C. § 16919; imposed new guidelines on the states for the maintenance of registries, *see id.* §§ 16912, 16914; and imposed new registration requirements on offenders, *see id.* §§ 16913-16— while repealing much of the then-existing registration regime, *see id.* §§ 14071-73 (2006).

To promote offenders' compliance with the new registration requirements, SORNA made it a federal crime to fail to register or update one's registration as

4

required by the Act under certain circumstances.  In relevant part, the criminal law provides as follows:

> (a)  In general.—Whoever—
>   (1) is required to register under [SORNA];
>   (2) . . .
>   (B) travels in interstate or foreign commerce . . . ; and
>   (3) knowingly fails to register or update a registration as required by [SORNA];
> shall be fined under this title or imprisoned not more than 10 years, or both.

18 U.S.C. § 2250.[1]

The particular civil registration requirements upon which criminal liability under § 2250(a) depends are set out at 42 U.S.C. § 16913.  *See Reynolds v. United States*, 132 S. Ct. 975, 978-79 (2012); *see also United States v. Guzman*, 591 F.3d 83, 90 (2d Cir. 2010) (explaining that, "without § 16913, § 2250 has no substance"

---

[1] Section 2250(a) provides in full:
> (a) In general.—Whoever—
>   (1) is required to register under the Sex Offender Registration and Notification Act;
>   (2)(A) is a sex offender as defined for the purposes of the Sex Offender Registration and Notification Act by reason of a conviction under Federal law (including the Uniform Code of Military Justice), the law of the District of Columbia, Indian tribal law, or the law of any territory or possession of the United States; or
>   (B) travels in interstate or foreign commerce, or enters or leaves, or resides in, Indian country; and
>   (3) knowingly fails to register or update a registration as required by the Sex Offender Registration and Notification Act;
> shall be fined under this title or imprisoned not more than 10 years, or both.

(internal quotation marks omitted)). Subsection (a) of § 16913 contains the core registration mandate. It provides:

> A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides, where the offender is an employee, and where the offender is a student. For initial registration purposes only, a sex offender shall also register in the jurisdiction in which convicted if such jurisdiction is different from the jurisdiction of residence.

42 U.S.C. § 16913(a). Subsection (b) governs the timing of "Initial registration," stipulating that "[t]he sex offender shall initially register—(1) before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement; or (2) not later than 3 business days after being sentenced for that offense, if the sex offender is not sentenced to a term of imprisonment." *Id.* § 16913(b). Subsection (c) sets the terms under which a sex offender must update his or her registration, requiring a sex offender to report within three business days—in person and in at least one registration jurisdiction—any "change of name, residence, employment, or student status." *Id.* § 16913(c).

The duration of these registration requirements is specified in 42 U.S.C. § 16915: The "full registration period" is fifteen years for a statutorily defined "tier I" sex offender, twenty-five years for a "tier II" sex offender, and the life of

6

the offender for a "tier III" offender.  42 U.S.C. § 16915(a); *see also id.* § 16911(2)-(4) (defining tiers of sex offenders).  The period of required registration is reduced for those offenders who maintain "clean record[s]" for a sufficient number of years.  *Id.* § 16915(b).

Rather than determine by statute what retroactive application to give the registration requirements, Congress vested in the Attorney General "the authority to specify the applicability of the requirements of [SORNA] to sex offenders convicted before the enactment of [SORNA] or its implementation in a particular jurisdiction."  42 U.S.C. § 16913(d).  Since SORNA's enactment, the Attorney General—in interim and final rules and proposed and final guidelines published between 2007 and 2010[2]—has specified that the Act's requirements apply to all sex offenders whose convictions predate the enactment of the Act, even in jurisdictions that have yet to implement it.[3]  We have held that SORNA

---

[2] *See* Interim Rule, 72 Fed. Reg. 8894, 8896 (Feb. 28, 2007) ("SORNA applies to all sex offenders (as the Act defines that term) regardless of when they were convicted."); Proposed Guidelines, 72 Fed. Reg. 30,210, 30,212 (May 30, 2007) ("SORNA's requirements apply to all sex offenders, including those whose convictions predate the enactment of the Act."); Final Guidelines, 73 Fed. Reg. 38,030, 38,063 (July 2, 2008) ("SORNA applies to all sex offenders, including those convicted of their registration offenses prior to the enactment of SORNA or prior to particular jurisdictions' incorporation of the SORNA requirements into their programs."); Final Rule, 75 Fed. Reg. 81,849, 81,850 (Dec. 29, 2010) (finalizing the interim rule "to eliminate any possible uncertainty or dispute concerning the scope of SORNA's application").

[3] SORNA does not require registration, however, by offenders who "have been in the

became applicable to pre-Act offenders at the latest when the Attorney General's final guidelines took effect. *See United States v. Lott*, 750 F.3d 214, 217 (2d Cir. 2014). This occurred on August 1, 2008, thirty days after the final guidelines were published. *See* 5 U.S.C. § 553(d) (providing that, subject to certain exceptions not applicable here, "[t]he required publication or service of a substantive rule shall be made not less than 30 days before its effective date").[4]

## B. Factual Basis for Gundy's Indictment

In October 2005, Herman Gundy was convicted of violating Maryland Criminal Law § 3-306, Sexual Offense in the Second Degree. He was sentenced to twenty years' imprisonment (with ten years suspended), to be followed by five years' probation. When he committed the offense that was the basis for his

community for a greater amount of time than the registration period required by SORNA." 73 Fed. Reg. at 38,046-47.

[4] The guidelines themselves identify their "Effective Date" as July 2, 2008, the date they were published in the Federal Register. *See* 73 Fed. Reg. at 38,030. But 5 U.S.C. § 553(d) creates an exception to the thirty-day prior publication requirement only for "(1) a substantive rule which grants or recognizes an exemption or relieves a restriction; (2) interpretive rules and statements of policy; or (3) as otherwise provided by the agency for good cause found and published with the rule." None of these exceptions applies: The final guidelines do not grant or recognize an exemption or relieve a restriction. They are substantive, not interpretive, rules. *See Lott*, 750 F.3d at 217-19. And the Attorney General "provided no statement of reasons to establish 'good cause.'" *United States v. Utesch*, 596 F.3d 302, 311 n.8 (6th Cir. 2010). Indeed, in these proceedings, the government itself has conceded that the effective date of the final guidelines was August 1, 2008. *See* Appellant's Br. 20 n.4.

Maryland conviction, Gundy was already subject to the supervision of the United States District Court for the District of Maryland in relation to an earlier federal conviction. Committing the Maryland offense violated the terms of his federal supervised release. In March 2006, Gundy pleaded guilty to the supervised release violation and was sentenced to twenty-four months' imprisonment for that offense, to be served consecutively to the Maryland sentence.

About four and a half years later, in November 2010, Gundy was transferred from the custody of the State of Maryland to the custody of the Federal Bureau of Prisons to serve his federal sentence for violating his supervised release. But he remained in Maryland, apparently still in a state facility notwithstanding his federal custody.

Federal authorities eventually transferred Gundy to FCI Schuylkill in Minersville, Pennsylvania. In March 2012, toward the end of his federal sentence and in preparation for his release, Gundy signed a "Community Based Program Agreement" authorizing the Department of Justice to make arrangements for his transition into community-based custody. Three months later, Gundy was ordered to be transferred to the Bronx Residential Re-Entry Center, a halfway

9

house in New York. At his request, Gundy was granted a furlough to travel, unescorted, on July 17, 2012, from FCI Schuylkill to the Bronx. In his furlough application, Gundy acknowledged, among other things:

> I understand that if approved, I am authorized to be only in the area of the destination shown above and at ordinary stopovers or points on a direct route to or from that destination. I understand that my furlough only extends the limits of my confinement and that I remain in the custody of the Attorney General of the United States. If I fail to remain within the extended limits of this confinement, it shall be deemed as escape from the custody of the Attorney General . . . .

Ex. H to Decl. of Assistant U.S. Att'y Emil J. Bove III.

Gundy traveled from FCI Schuylkill to the Bronx Residential Re-Entry Center on July 17 as planned. On August 27, 2012, after completing his stay in the halfway house, Gundy was released from federal custody to a residence in the Bronx.

The government contends that, contrary to SORNA's requirements, Gundy registered in neither Maryland nor New York. On January 7, 2013, a grand jury returned an Indictment against Gundy in the United States District Court for the Southern District of New York charging him, under 18 U.S.C. § 2250, with being required to register under SORNA; traveling interstate from Pennsylvania to New York; and then failing to register as required.

10

## C. District Court Proceedings

In March 2013, Gundy moved in the District Court to dismiss the Indictment for failure to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B)(v). Gundy argued principally that he was required to register only after the alleged interstate travel between Pennsylvania and New York, and thus could not have violated § 2250(a), the elements of which must be satisfied sequentially. The District Court agreed with Gundy and granted his motion.

In granting the motion, the court rejected the government's contention that Gundy, who was convicted of a covered crime before SORNA's enactment in 2006, was "required to register" as soon as SORNA became retroactive. The court interpreted 42 U.S.C. § 16913(b)(1)—which provides that a "sex offender shall initially register . . . before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement"—as demonstrating that Gundy was "required to register" under 18 U.S.C. § 2250(a)(1) only "shortly before he was released from custody in New York," and after he had traveled interstate, *United States v. Gundy*, No. 13 Crim. 8(JPO), 2013 WL 2247147, at *6, *13 (S.D.N.Y. May 22, 2013).

11

Accounting for the fact that the sentence Gundy was serving immediately before his release in New York was for violating the terms of his federal supervised release, and not for the Maryland sexual assault, the District Court held that the federal sentence was also "a sentence of imprisonment with respect to" Gundy's sex offense. *See id.* at *11-12. In a motion for reconsideration, the government argued for the first time that Gundy was nevertheless required to register at the latest before he completed his Maryland sentence pursuant to 42 U.S.C. § 16913(b)(1), because the language of the statute states that a sex offender must register "before completing *a* sentence of imprisonment," in the singular (emphasis added).

The District Court denied the government's motion, concluding that this argument was waived, but also rejecting it on the merits due to considerations of "statutory purpose and the rule of lenity." *United States v. Gundy*, No. 13 Crim. 8(JPO), 2013 WL 4838845, at *2-3, *6 (S.D.N.Y. Sept. 11, 2013). The government now appeals the court's orders.

**DISCUSSION**

Since the Indictment's dismissal raises questions of law, our review is *de novo*. *See United States v. Alfonso*, 143 F.3d 772, 775 (2d Cir. 1998).

The government argues that the Indictment should be reinstated because Gundy was "required to register" under SORNA from the moment he was designated a "sex offender" under the Act—at the latest, August 1, 2008, when the Attorney General's final guidelines on retroactivity became effective. According to the government, § 16913(b)—upon which the District Court principally relied—"does not purport to determine when an individual incurs an obligation to register under SORNA, [but] only when there has been a failure to make an initial registration as required by the statute." Appellant's Br. 21. The government argues, in the alternative, that even accepting Gundy's contrary contention that § 16913(b) specifies when a sex offender first is required to register, Gundy would have been required to register at the latest as of November 30, 2010, when he was released from Maryland custody into the custody of the Federal Bureau of Prisons. Under either interpretation, Gundy became a person "required to register" before his July 17, 2012 trip from Pennsylvania to New York.

We agree with the government's first argument that Gundy was a person "required to register" from the time SORNA became retroactive. A person is "required to register" under SORNA "[o]nce [that] person becomes subject to SORNA's registration requirements." *Carr*, 560 U.S. at 447. For Gundy, who was convicted of a sex offense in 2005, before SORNA's July 2006 effective date, the registration requirements attached at the latest on August 1, 2008, the effective date of the Attorney General's final guidelines, *see Lott*, 750 F.3d at 217; 5 U.S.C. § 553(d).

Gundy contends that he was not subject to SORNA's registration requirements at all until shortly before his 2012 release from federal custody. In urging this position, he relies principally on § 16913(b), which provides (as relevant here) that a "sex offender shall initially register . . . before completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement." 42 U.S.C. § 16913(b)(1). Gundy points to subsection (b)'s reference to "initial" registration and reasons that a person cannot be "required to register" before that person is required *initially* to register.

Although § 16913(b) undoubtedly regulates initial registration, we disagree that this means that § 16913(b) also regulates when registration

14

requirements attach. It is our view that § 16913(b) is most naturally read to set deadlines for initial registration, not to establish the conditions that make registration mandatory. The provision is worded in terms of cutoff dates rather than beginning points: Thus, subsections (b)(1) and (2) direct that an offender sentenced to a term of imprisonment must initially register "*before* completing a sentence of imprisonment with respect to the offense giving rise to the registration requirement," and that an offender not sentenced to a term of imprisonment must register "*not later than 3 business days after* being sentenced for that offense." 42 U.S.C. § 16913(b)(1), (2) (emphases added).

Gundy does not dispute this reading of the statute. Instead, he argues that there can be no "require[ment] to register" until an offender has reached a registration deadline. But this argument gives insufficient weight to the fact that § 2250(a) treats being "required to register" and "fail[ing] to register or update a registration as required" as separate and distinct elements of the criminal offense. 18 U.S.C. § 2250(a)(1), (3). The temporal relationship between these elements—the first necessarily is satisfied before the second, *see Carr*, 560 U.S. at 446—establishes that a person can be "subject to SORNA's registration requirements," *id.* at 447, before he or she is subject to immediate sanction for

15

"fail[ing] to register," 18 U.S.C. § 2250(a)(3).[5] Section 16913(b) does not regulate when registration requirements attach.

Gundy argues, *inter alia*, that the government's interpretation of when registration requirements attach undermines SORNA's purposes, contradicts Supreme Court precedent, and ignores other provisions of the Act. We find none of his arguments persuasive.

SORNA was enacted in part "to address the deficiencies in prior law that had enabled sex offenders to slip through the cracks." *Carr*, 560 U.S. at 455. According to Gundy, permitting sex offenders to satisfy their initial registration requirements by initially registering long before their release would, contrary to this purpose, enable "offenders . . . easily [to] abscond following their release from prison, before they had registered their community address." Appellee's Br. 28. This argument ignores that a sex offender, having initially registered, remains subject to SORNA's registration requirements and is required "not later than 3 business days" after a change in residence to update his or her registration

---

[5] Gundy's argument is also in tension with his assertion that he was required to register "shortly before" his release from custody. Were the government "simply wrong in asserting that 'a person can be required to register under a statute for a period of time prior to that person's deadline for completing that registration process,'" Appellee's Br. 24 (quoting Appellant's Br. 23), there would be no period of time before the deadline—however "short"—during which a person would be subject to a registration obligation.

16

information. 42 U.S.C. § 16913(c). Such an offender who initially registers and is then released from custody is in a position similar to that of a sex offender who is not sentenced to a term of imprisonment and must initially register "not later than 3 business days after being sentenced for that offense." *Id.* § 16913(b)(2). In either case, the sex offender is "required to register"; should he or she leave the state of conviction and thereafter fail to register, a federal criminal penalty may be imposed. In contrast, were the Court to adopt Gundy's position that a sex offender is "required to register" only upon the arrival of the offender's initial registration deadline, an offender not sentenced to a prison term—and thus, in Gundy's view, "required to register" 3 business days after sentencing—would not be subject to a federal criminal penalty if he or she left the state on the day of sentencing and thereafter failed to register. The travel would have occurred before the offender was "required to register," precluding prosecution. *See Carr*, 560 U.S. at 446. This result certainly would run counter to SORNA's purpose.

Gundy's attempt to use *Carr v. United States*, 560 U.S. 438 (2010), to challenge the government's position is not persuasive. In *Carr*, the Supreme Court faced the question whether a defendant who had both been convicted of a sex offense and traveled interstate before SORNA's enactment could be

17

convicted under § 2250(a) for failure to register. *See id.* at 442. The Court concluded that he could not. *See id.* at 458. In reaching this conclusion, the Court agreed with the defendant that the three elements of the crime necessarily would have had to occur after SORNA's effective date, rejecting the suggestion that being "required to register under [SORNA]" was merely "shorthand" for the status of having been convicted of a sex offense covered by SORNA. *Id.* at 446-47 (internal quotation marks omitted).

Gundy charges that the government's position here runs afoul of the *Carr* Court's holding that being "required to register" under SORNA "denotes a more specific meaning than being among a class of sex offenders, or having a prior sex offense conviction." Appellee's Br. 20. But the government's position, and the one we adopt here, is not that the set of persons who are "required to register" is equivalent to the set of persons who been convicted of a sex offense. Rather, it is that a sex offender is "required to register" once he or she is "subject to" SORNA's registration requirements. This can occur only after SORNA's effective date, and after SORNA has been made applicable to that person. Gundy, for example, was convicted in 2005, before SORNA's effective date, and therefore was "required to register" not upon his conviction, but only once SORNA was

18

made retroactively applicable to him. Further, the period of required registration does not necessarily persist indefinitely. A person for whom the statutorily prescribed registration period is complete is no longer subject to SORNA's registration requirements, even as he or she remains among the class of statutorily defined sex offenders. *See* 42 U.S.C. § 16915; 73 Fed. Reg. at 38,046-47.

Gundy points to the fact that the state has a duty to inform a sex offender of the registration requirements only "shortly before" his or her release from custody, 42 U.S.C. § 16917(a), as another reason to conclude that Gundy could not have been a person "required to register" until shortly before his release from federal custody consecutive to his state custody. But we have emphasized that SORNA's requirements for the states and for sex offenders are not necessarily interdependent: In *United States v. Hester*, 589 F.3d 86 (2d Cir. 2009) (per curiam), we held that the defendant's duty to register under SORNA was dependent neither on his actual knowledge of SORNA's requirements nor on the state's implementation of SORNA, *see id*. at 91-93; the application of the registration requirements cited in § 2250(a)(1) did not hinge on whether the state had provided notice of those requirements, *see id*. at 92. And in any case, the timing of the state's duty to provide notice is not random: An offender who is "required

19

to register" under SORNA but does not register is not vulnerable to any punishment until after the time at which the state incurs a duty to provide notice. This is because an offender cannot have "fail[ed] to" satisfy any SORNA requirement applicable to him or her until the deadline for satisfying that requirement has passed; for a sex offender sentenced to a term of imprisonment, the initial registration deadline is when he or she "complet[es] a sentence of imprisonment with respect to the offense giving rise to the registration requirement," 42 U.S.C. § 16913(b)(1).[6] That Congress required states to provide notice to sex offenders only shortly before their release from custody fails to demonstrate that Congress did not intend for sex offenders to be persons "required to register" from an earlier stage.

Further, any suggestion that Gundy could not have been a person "required to register" beginning in 2008 because registration would have been impossible for him to accomplish while in custody must be rejected. The statute expressly requires an offender sentenced to imprisonment to initially register while still in custody. *See* 42 U.S.C. § 16913(b)(1) (requiring a sex offender to register "before completing a sentence of imprisonment"). And the nature of the

---

[6] Indeed, any offender designated as such based on a state law conviction does not violate § 2250(a)—and is not subject to *federal* criminal sanction—unless he or she fails to register after traveling interstate.

20

registration information that a sex offender must provide accounts for the possibility that a sex offender may not have a current place of employment or permanent residence. For example, § 16914(a) requires a sex offender to provide the name and address of any place where the sex offender "resides *or will reside*," or "is . . . *or will be*" an employee or student. *Id.* § 16914(a)(3)-(5) (emphases added). Notably, it is only after initial registration, to "[k]eep[] the registration current," that a sex offender must "appear in person" to provide information, *id.* § 16913(c); and the particular requirement to keep one's registration current in this way does not apply to sex offenders during any period of custody or civil commitment, *see id.* § 16915(a); 73 Fed. Reg. at 38,068.

In sum, Gundy was a person "required to register" under SORNA beginning at the latest on August 1, 2008, the effective date of the Attorney General's final guidelines. This date arrived well before his alleged travel from Pennsylvania to New York. The District Court thus erred in concluding that Gundy became a person "required to register" under SORNA only after traveling interstate.

Gundy urges us, to the extent we disagree with the District Court, to affirm the court's dismissal order on the alternative ground that the travel

21

charged in the Indictment does not amount to "interstate travel" within the meaning of § 2250(a)(2)(B). Gundy notes that by virtue of his one-day travel agreement with the federal government, he remained in the custody of the Federal Bureau of Prisons when he traveled from Pennsylvania to New York to take up his residence in the halfway house. As a result, he argues, his travel fell outside the purview of § 2250(a)(2)(B). Gundy raised this issue before the District Court, but the District Court did not reach it. We leave it to the court on remand to decide in the first instance whether dismissal of the Indictment is warranted on this other ground.

**CONCLUSION**

For the reasons above, we REVERSE the District Court's order dismissing the Indictment. We REMAND the cause to the District Court for reinstatement of the Indictment and for further proceedings consistent this opinion. Gundy's appeal from the District Court's order denying reconsideration is moot.

22