# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 26, 2016      Decided February 24, 2017

No. 11-3115

UNITED STATES OF AMERICA,
APPELLEE

v.

ANTHONY T. ROSS,
APPELLANT

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cr-00276-1)

---

*Lisa B. Wright*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A.J. Kramer*, Federal Public Defender. *Tony Axam Jr.* and *Rosanna M. Taormina*, Assistant Federal Public Defenders, entered appearances.

*Daniel J. Lenerz*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief was *Elizabeth Trosman*, Assistant U.S. Attorney.

Before: MILLETT and PILLARD, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* WILLIAMS.

Opinion concurring in part, dissenting in part, and dissenting from the judgment filed by *Circuit Judge* MILLETT.

WILLIAMS, *Senior Circuit Judge*: Anthony T. Ross was convicted in 1999 of misdemeanor sexual assault. In 2009 he moved from Washington D.C. to Ohio, and on October 7, 2010 he was indicted for failing to register with local authorities pursuant to the Sex Offender Registration and Notification Act ("SORNA"). See 120 Stat. 587, 590 (2006), 42 U.S.C. § 16901 *et seq.*; 18 U.S.C. § 2250(a). The act, passed by Congress in 2006, "seeks . . . to make more uniform and effective" the "patchwork of federal and 50 individual state [sex offender] registration systems," *Reynolds v. United States*, 132 S. Ct. 975, 978 (2012). In pursuit of that goal, SORNA imposes federal criminal penalties on a person who is subject to the act's registration requirements, who "travels in interstate or foreign commerce," and who knowingly fails to update his registration when required by the act to do so. § 2250(a).

Ross moved to dismiss the indictment, claiming a number of flaws in its legal basis, two of which he presses before us. His sexual assault conviction had preceded SORNA's 2006 enactment, and the Supreme Court has established that SORNA did not apply to such persons on its own but could be made applicable only if the Attorney General so "specif[ied]." *Reynolds v. United States*, 132 S. Ct. 975, 984 (2012). Ross argued first that insofar as the Attorney General took steps *before* Ross's alleged SORNA violation to "specify" the act's application to pre-SORNA offenders, those efforts were defective under the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*. Second, he argued that Congress's vesting the Attorney General with such authority violated the

constitutional rule against undue delegation of legislative authority. See *United States v. Ross*, 778 F. Supp. 2d 13, 16 (D.D.C. 2011). The district court denied Ross's motion to dismiss, and Ross entered a conditional guilty plea, reserving his right to appeal on the legal issues.

All the other geographic circuits have addressed the non-delegation claim and have rejected it. *United States v. Nichols*, 775 F.3d 1225, 1231 (10th Cir. 2014), *rev'd on other grounds*, 136 S. Ct. 1113 (2016); *United States v. Richardson*, 754 F.3d 1143, 1146 (9th Cir. 2014); *United States v. Cooper*, 750 F.3d 263, 271-72 (3d Cir. 2014); *United States v. Goodwin*, 717 F.3d 511, 516-17 (7th Cir. 2013); *United States v. Kuehl*, 706 F.3d 917, 920 (8th Cir. 2013); *United States v. Sampsell*, 541 F. App'x 258, 259-60 (4th Cir. 2013); *United States v. Parks*, 698 F.3d 1, 7-8 (1st Cir. 2012); *United States v. Felts*, 674 F.3d 599, 606 (6th Cir. 2012); *United States v. Guzman*, 591 F.3d 83, 92-93 (2d Cir. 2010); *United States v. Whaley*, 577 F.3d 254, 262-64 (5th Cir. 2009); *United States v. Ambert*, 561 F.3d 1202, 1212-14 (11th Cir. 2009). But see *United States v. Nichols*, 784 F.3d 666, 667-77 (10th Cir. 2015) (Gorsuch, J., dissenting from denial of rehearing *en banc*). On the view we take of Ross's APA claims we need not reach the delegation issue. Concluding that the act did not apply to pre-SORNA offenders at the time of Ross's charged conduct because of the Attorney General's APA violations, we reverse the district court ruling and vacate the conviction.

\* \* \*

SORNA requires sex offenders to maintain registrations "where the offender resides, where the offender is an employee, and where the offender is a student." 42 U.S.C. § 16913; see *United States v. Kebodeaux*, 133 S. Ct. 2496, 2499 (2013). If a person is convicted of a sex offense after SORNA's enactment, he must register under time limits

specified in the act. And he must keep the registration current by updating his registration within three business days of any "change of . . . residence." § 16913(c).

For persons convicted before SORNA's enactment, however, the act provides that the "Attorney General shall have the authority to specify the applicability of [SORNA's] requirements," § 16913(d), and the Supreme Court has read the act not to make its registration requirements applicable "to pre-Act offenders until the Attorney General so specifies," *Reynolds*, 132 S. Ct. at 984. What is critical for our purposes is when the Attorney General so specified.

The most obvious candidate for this specification is a rule the Attorney General issued in December 2010 after a rulemaking whose APA compliance is not contested here. *Applicability of the Sex Offender Registration and Notification Act*, 75 Fed. Reg. 81849, 81850/2 (Dec. 29, 2010) (codified at 28 C.F.R. part 72) (the "*Final Rule*") (explicitly making SORNA applicable to "sex offenders convicted . . . prior to the enactment of that Act" (internal quotation marks omitted)). But this rule took effect too late to support Ross's conviction for failure to update his registration in the wake of his 2009 move to Ohio.

The government contends that two earlier actions sufficed: an interim rule issued in 2007 and "guidelines" proposed in 2007 and finalized in 2008. We find them inadequate.

In 2007 the Attorney General adopted an interim rule declaring SORNA applicable to pre-enactment offenders. *Applicability of the Sex Offender Registration and Notification Act*, 72 Fed. Reg. 8894, 8897/3 (Feb. 28, 2007) (the "*Interim Rule*"). In the preamble, the Attorney General expressed his view—later rejected by *Reynolds*—that the requirements for

pre-SORNA offenders automatically "took effect when SORNA was enacted on July 27, 2006." *Id.* at 8895/3. He also hedged, stating that he was "exercis[ing] his authority . . . to specify this scope of application for SORNA, *regardless* of whether SORNA would apply with such scope absent this rule." *Id.* 8896/2 (emphasis added). But he issued the rule without providing for advance notice or inviting comment, as required by the APA, see 5 U.S.C. § 553(b)-(d), instead making the rule effective immediately, with provision for comments thereafter. To justify that shortcut, he invoked the "good cause" exceptions of § 553(b), (d), specifically the allowance for instances where providing notice and comment would be "contrary to the public interest." *Interim Rule*, 72 Fed. Reg. at 8896/3-8897/1. He claimed that "immediate effectiveness" was needed to "protect the public from sex offenders" by "eliminat[ing] any possible uncertainty about the applicability of the Act's requirements." *Id.* at 8896/3. Delay would thwart these goals, he said, "because a substantial class of sex offenders could evade the Act's registration requirements . . . during the pendency of a proposed rule." *Id.* at 8897/3.

We've said that the "'good cause' exception . . . is to be 'narrowly construed and only reluctantly countenanced.'" *Jifry v. F.A.A.*, 370 F.3d 1174, 1179 (D.C. Cir. 2004) (quoting *Tennessee Gas Pipeline Co. v. FERC*, 969 F.2d 1141, 1144 (D.C. Cir. 1992)). We review the agency's finding of good cause *de novo*. *Sorenson v. F.C.C.*, 755 F.3d 702, 706 (D.C. Cir. 2014). Here the decisions of Congress and the Attorney General himself bely any claim that there existed such a pressing need for immediate action as to warrant brushing aside the statutory notice-and-comment requirements.

Far from seeking "immediate effectiveness," Congress built in at least some delay with its provision for the Attorney General to "specify" the act's application to pre-SORNA

offenders, thereby allowing him, as the *Reynolds* Court observed, to work out a wide range of "complexities, lacunae, and difficulties" that application to pre-SORNA offenders would entail. *Reynolds*, 132 S. Ct. at 982. The Court also observed that Congress had allowed states three years to implement SORNA's requirements (extendable by the Attorney General to five), *id.* at 981, and that the government had "overstate[d] the need for *instantaneous* registration," *id.* at 983. Of course a relaxed statutory schedule (or no deadline at all) would not militate against dispensing with notice and comment if some emergency had arisen after enactment, as did the 9/11 attacks, see *Jifry*, 370 F.3d at 1179-80, but the government points to no such unexpected development here.

The Attorney General's own behavior also undercuts the current claim of urgency: as *Reynolds* observed, he waited over half a year—217 days—after the effective date of the act to publish the *Interim Rule*. 132 S. Ct. at 983. In this context, the incremental delay entailed by a 30-day comment period and the requisite time for thinking about comments seems a very reasonable trade-off—and its denial unreasonable.

Because the *Interim Rule* "utter[ly] fail[ed] to comply with notice and comment," this error "cannot be considered harmless if there is any uncertainty at all as to the effect of that failure." *Sprint Corp. v. F.C.C.*, 315 F.3d 369, 376 (D.C. Cir. 2003). The government suggests that its reaching the same conclusion in the *Final Rule* and in its SORNA guidelines (discussed below), despite having received numerous comments, dispels any uncertainty. That argument might justify treating the *Final Rule* as effective. See *Federal Express Corp. v. Mineta*, 373 F.3d 112, 120 (D.C. Cir. 2004). But it is the *Interim Rule* that the government is using to justify the indictment for conduct occurring *before* the *Final Rule*; procedurally sound adoption of a rule after the conduct affected can have no legitimate effect on that conduct. See

*Sorenson*, 755 F.3d at 705-06 & n.2. To find an agency's short-circuiting of notice-and-comment harmless, we have relied on true inevitability—cases where to heed adverse comments the agency would have had to violate the controlling statute, see *City of Portland v. EPA*, 507 F.3d 706, 714-16 (D.C. Cir. 2007); *Sheppard v. Sullivan*, 906 F.2d 756, 762 (D.C. Cir. 1990). More generally, if brute persistence alone could cure a failure to invite comment, agencies would have a perverse incentive to disregard the comments they received once they got around to allowing them. Cf. *Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 95 (D.C. Cir. 2012) (if belated comment-taking cured all error, "agencies would have no use for the APA"). We join the circuits that have invalidated the *Interim Rule*. See *United States v. Brewer*, 766 F.3d 884, 892 (8th Cir. 2014); *United States v. Reynolds*, 710 F.3d 498, 524 (3d Cir. 2013); *United States v. Valverde*, 628 F.3d 1159, 1168-69 (9th Cir. 2010); *United States v. Utesch*, 596 F.3d 302, 312 (6th Cir. 2010). But see *United States v. Johnson*, 632 F.3d 912, 930, 933 (5th Cir. 2011) (finding no good cause but error harmless); *United States v. Dean*, 604 F.3d 1275, 1282 (11th Cir. 2010) (holding that Attorney General had good cause to dispense with notice and comment); *United States v. Gould*, 568 F.3d 459, 470 (4th Cir. 2009) (same); *United States v. Dixon*, 551 F.3d 578, 583 (7th Cir. 2008) (calling attack on lack of notice and opportunity to comment on *Interim Rule* "frivolous"), *rev'd on other grounds sub nom. Carr v. United States*, 560 U.S. 438 (2010).

The government next points to the "guidelines" that the Attorney General finalized in 2008. The Attorney General is tasked with determining which states have updated their sex offender registries to comply with SORNA; a state's failure to do so entails a federal funding haircut. 42 U.S.C. § 16925(a). Accordingly, the Attorney General developed guidelines to "assist[] . . . the states and other jurisdictions in incorporating the SORNA requirements into their sex offender registration

and notification programs." *The National Guidelines for Sex Offender Registration and Notification*, 73 Fed. Reg. 38030, 38030/1-2 (July 2, 2008) (the "*Final Guidelines*"). The *Final Guidelines* might be taken to satisfy 42 U.S.C. § 16913(d)'s requirement that the Attorney General "specify" SORNA's retroactive effect. At the head of a section in the Introduction captioned "Retroactivity," they explain that the guidelines "require the application by a jurisdiction of SORNA's requirements to sex offenders convicted prior to the enactment of SORNA . . . ." 73 Fed. Reg. at 38035/3; see also *The National Guidelines for Sex Offender Registration and Notification*, 72 Fed. Reg. 30210, 30212/3-13/1 (May 30, 2007) (the proposed guidelines). Interestingly, here the Attorney General gave notice and invited comment. 72 Fed. Reg. at 30210/1. He received abundant response, representing both state government and sex offender interests, many arguing against retroactive application, particularly to juvenile offenders. See E-mail from Wayne Harper, Utah House of Representatives, to Melanie Bowen, Staff, U.S. Senate & GetSmart, U.S. DOJ, at 1 & attached letter at 2 (July 31, 2007); Letter from Arthur E. Grim, Chairman, Pa. Juvenile Ct. Judges' Comm'n, to Laura L. Rogers, Director, U.S. DOJ, at 2 (July 25, 2007); E-mail from Redacted, to GetSmart, U.S. DOJ, at 1 (July 31, 2007). Each of the foregoing comments is available at https://web.archive.org/web/20080313001315/http://www.ojp. usdoj.gov/smart/pdfs/guideline_comments.pdf.

The *Final Guidelines*, however, do not appear to represent an effort to "specify" retroactive application to offenders as required by *Reynolds*. The *Guidelines*' retroactivity language, quoted above, merely sets the stage for the document's real purpose: spelling out what the states and other governmental bodies must do to handle the new registration mandates, including those the *Interim Rule* arguably "specified." See 72 Fed. Reg. at 30212/3 (proposed

guidelines' "Retroactivity" discussion noting practical challenges jurisdictions face in identifying pre-Act offenders); 73 Fed. Reg. at 38031/1 (*Final Guidelines* "clarifying that jurisdictions may rely on their normal methods and standards" to search criminal records for pre-Act offenders who must register). Thus the *Final Guidelines* appear to simply represent the latter half of the Attorney General's bifurcated SORNA rulemaking effort, which paralleled SORNA's "two sorts" of requirements: (1) specifying offenders' "registration obligations . . . as a matter of federal law"; and (2) advising jurisdictions on incorporating "SORNA standards in their own" programs. See *Interim Rule*, 72 Fed. Reg. at 8895/2; see also *id.* at 8896/1 (promising to later "issue general guidelines to provide guidance and assistance to the states . . . in implementing SORNA").

But even if we were to resolve that issue in favor of the government, the *Final Guidelines* would still suffer a fatal flaw: the Attorney General disclaimed any authority to decide for himself whether SORNA applied to pre-enactment offenders. Acting before the *Reynolds* decision, he took the view that SORNA *had applied* to pre-SORNA offenders ever since its enactment. 73 Fed. Reg. at 38046/2 ("SORNA's requirements took effect when SORNA was enacted on July 27, 2006, and they have applied since that time to all sex offenders, including those whose convictions predate SORNA's enactment."). Although he disagreed with the commenters' idea that pre-SORNA offenders should be treated differently, he said that "in any event" he "could not" depart from Congress's "legislative judgment that SORNA's registration and notification requirements . . . are justified by the resulting benefits in promoting public safety." *Id.* at 38035/3-36/1.

Where a statute grants an agency discretion but the agency erroneously believes it is bound to a specific decision,

we can't uphold the result as an exercise of the discretion that the agency disavows. *Prill v. NLRB*, 755 F.2d 941, 947-48 (D.C. Cir. 1985); see also *Peter Pan Bus Lines, Inc. v. Fed. Motor Carrier Safety Admin.*, 471 F.3d 1350, 1353-54 (D.C. Cir. 2006). Obviously the agency hasn't exercised the discretion Congress granted, on which exercise the legitimacy of the outcome depends. As *Reynolds* explains, Congress added the "specify" clause so that the Attorney General could "fill[] potential lacunae (created by related Act provisions)" and "diminish or eliminate those uncertainties" around SORNA's requirements. 132 S. Ct. at 982. Here, the Attorney General expressly—and erroneously—imputed to Congress "a legislative judgment" that the public safety "benefits" of imposing registration on pre-SORNA offenders outweighed the burdens on sex offenders, leaving no room for him to balance them. See 73 Fed. Reg. at 38036/1. By the time of the *Final Rule*, the Attorney General eased off his insistence that SORNA automatically established criminal liability for pre-Act offenders, saying that "Congress at the very least placed it within the Attorney General's discretion to apply SORNA's requirements to [pre-SORNA offenders] if he determines (as he has) that the public benefits of doing so outweigh any adverse effects." 75 Fed. Reg. at 81850/3.

The government insists that the Attorney General exercised his discretion to specify SORNA's pre-Act reach despite his "view" that Congress had settled the matter. Appellee Br. at 21. Agencies can certainly rely on alternative rationales, provided that they make those alternatives explicit, as the Attorney General did in the *Final Rule*. *See Nat'l Fuel Gas Supply Corp. v. FERC*, 468 F.3d 831, 839 (D.C. Cir. 2006). But until the *Final Rule* the Attorney General failed to pursue that path—he recognized and exercised discretion only in areas separate from pre-SORNA offenders' registration obligations, such as questions of what duties should be imposed on the states under SORNA to register pre-SORNA

offenders, juveniles, and offenders convicted abroad. 73 Fed. Reg. at 38031/1, 38041/1-2.

The dissent disagrees on this final point and reads the Attorney General's decisions defining the states' obligations to track pre-SORNA offenders as simultaneously creating retroactive criminal responsibility for pre-Act sex offenders. *Dissent* at 8-10. The dissent's logic seems to be that a non-registering sex offender violates SORNA only to the extent that a SORNA-compliant state program required him to register. This linkage of state duties with sex offender obligations, if it were correct, would tend to fill the pre-*Final Rule* gap in the Attorney General's exercise of discretion: were SORNA-compliant state registration programs *necessary* for sex offender liability, it would not be a great leap to regard guidelines for how those programs must register pre-SORNA offenders as a sufficient exercise of the Attorney General's authority to specify retroactivity.

But any such linkage is belied by the *Reynolds* decision and the government's conduct. *Reynolds* emphasized that SORNA empowered the Attorney General to adopt a rule applying SORNA to "all preimplementation offenders . . . . quickly, well before a jurisdiction implements the Act's requirements." 132 S. Ct. at 983.

Moreover, *pace* our dissenting colleague, the Attorney General has acted accordingly, continuously insisting on a separation between the imposition of criminal liability and the establishment of SORNA-compliant registration systems. For example, the government has maintained in this litigation that sex offender liability is quite independent of a jurisdiction's SORNA compliance. Though acknowledging that the District had no SORNA-compliant system in place at the relevant time, the government argued (successfully) that Ross had a federal duty to register as long as his place of residency had a

registration "procedure in place," regardless of whether it was compliant.[1] *Ross*, 778 F. Supp. 2d at 23. Ross's conviction depended on that ruling. It is matched by convictions the government has secured in other circuits when the offender's state had neither implemented the act nor provided notice of SORNA's obligations. See, e.g., *United States v. Elk Shoulder*, 738 F.3d 948, 954-55 (9th Cir. 2013); *Felts*, 674 F.3d at 603-04 & n.1; *United States v. Heth*, 596 F.3d 255, 258-60 & n.3 (5th Cir. 2010); *United States v. Brown*, 586 F.3d 1342, 1350-51 (11th Cir. 2009); *Gould*, 568 F.3d at 466-69; *United States v. Hester*, 589 F.3d 86, 91-93 (2d Cir. 2009).

There are additional grounds for rejecting the idea that the Attorney General intended to make sex offenders' criminal liability under 18 U.S.C. § 2250 track states' adoption of SORNA-compliant registration systems. The Attorney General's *Interim Rule*, for example, provides: "In contrast to SORNA's provision of a three-year grace period for jurisdictions to implement its requirements, SORNA's direct federal law registration requirements for sex offenders are not subject to any deferral of effectiveness. They took effect when SORNA was enacted on July 27, 2006, and currently apply to all offenders in the categories for which SORNA requires registration." 72 Fed. Reg. at 8895/3.

The dissent argues that the Attorney General left states some slack in how they structure their registration systems and that these concessions necessarily eased SORNA's

---

[1] Ohio had already implemented SORNA. U.S. Dep't of Justice, *SORNA Implementation Review: State of Ohio* (Sept. 2009). The government's argument seems to assume that SORNA required Ross both to register in Ohio *and* to "notif[y] the District of Columbia of his move." *Ross*, 778 F. Supp. 2d at 16. Although not contested by Ross, this latter requirement has since been foreclosed by *Nichols v. United States*, 136 S. Ct. 1113, 1116-17 (2016).

requirements on offenders as well. *Dissent* at 8-10. The Attorney General did say that aspects of his retroactivity guidelines "may" indirectly "limit their effect on" pre-SORNA offenders. 73 Fed. Reg. at 38036/1. But these provisions simply reduced the federal burden on states to actively seek out and register sex offenders with "older convictions" who are off the justice system's radar.[2] *Id.* Such an offender would benefit collaterally, as there would be less likelihood of state officials taking affirmative steps to rope him in. And to the extent that some states use the leeway provided to de facto thwart pre-SORNA offenders' ability to register (e.g., not allowing registration under circumstances applicable to some offenders), those offenders would have a defense of infeasibility under federal law. 18 U.S.C. § 2250(c). But this collateral benefit for offenders could hardly have been the Attorney General's intent when he offered states some relief from the task of physically tracking down every living pre-SORNA offender. Instead, the Attorney General made clear his view—correct or not—that federal liability would attach to the offender regardless of whether his state has met, exceeded, or fallen short of SORNA's funding conditions. As he put it, "While SORNA's requirements apply to all sex offenders . . . the guidelines do not require jurisdictions to identify and register every such offender." 73 Fed Reg. at 38036/1; see *id.* at 38035/2 (noting that SORNA "requires a sex offender to register 'for the full [federal] registration period'" unless the statutory "clean record" exception applies).

---

[2] An additional purported reduction, the allowance of credit to pre-SORNA offenders for time elapsed since release from prison, involved no discretion at all: the Attorney General properly described it as a simple mathematical outcome of SORNA's time "limits on the required duration of registration." *Id.* at 38046/3.

14

In short, the Attorney General, from his first official pass on the meaning and effect of SORNA to the litigation of this case, has seen two distinct but related domains—the establishment of criminal liability for pre-Act sex offenders, and the design of the conditions necessary for states (and other affected jurisdictions) to secure funding for SORNA compliance. We all agree that the second has collateral effects on sex offenders; our dissenting colleague believes that the Attorney General's action in the second domain, simply because of those collateral effects, suffices for exercise of discretion in the first domain. Had the Attorney General openly interpreted SORNA the way the dissent does—requiring "a knowing failure to register *under a state system*," *Dissent* at 5—we might agree. But because the issue here is what the Attorney General *said* he was doing, we have little choice other than to infer that the government's words were serious: that pre-Act sex offenders required to register by SORNA are guilty of a violation even if the relevant state has not sought to register the defendant in compliance with SORNA (though under some circumstances state non-compliance may give the offender an intent or impossibility defense). Indeed, the government has successfully prosecuted for failure to register an offender who lacked notice of SORNA and whose *state didn't require him to register at all*. *United States v. Pendleton*, 636 F.3d 78, 85 (3d Cir. 2011).

Apropos the dissent, its suggestion that our holding will have "potentially severe and far-reaching" consequences rests on the idea that even in the *Final Rule* the Attorney General failed to "exercise[] his discretion to make a policy judgment about SORNA's retroactive application *vel non*." *Dissent* at 14 (first quote), 17 (second). But as we already noted, that rule did recognize his authority, albeit reluctantly and contingently: "Congress at the very least placed it within the Attorney General's discretion to apply SORNA's requirements to [pre-SORNA offenders] if he determines (as

he has) that the public benefits of doing so outweigh any adverse effects." *Final Rule*, 75 Fed. Reg. at 81850/3.

A number of other circuits have found that the *Final Guidelines* properly specified SORNA's application to pre-enactment offenders. But in those cases the principle we adopted in *Prill* was not invoked, and their opinions accordingly focused on other purported deficiencies in the *Final Guidelines*. See *United States v. Manning*, 786 F.3d 684, 686-87 (8th Cir. 2015) (finding that the guidelines "were an act of substantive rulemaking" and "satisfied the notice and comment requirements"); *United States v. Lott*, 750 F.3d 214, 217-21 (2d Cir. 2014) (rejecting claims that the guidelines were mere interpretive rules and that they failed to follow notice-and-comment procedures); *United States v. Whitlow*, 714 F.3d 41, 45-47 (1st Cir. 2013) (rejecting arguments that the guidelines invoked the incorrect statutory authority and failed to allow meaningful comment by "'assum[ing]' retroactivity"); *United States v. Stevenson*, 676 F.3d 557, 563-65 (6th Cir. 2012) (rejecting claim that the guidelines relied on incorrect statutory authority); *Valverde*, 628 F.3d at 1160 (holding, without discussion, that the final guidelines made SORNA applicable to pre-enactment offenders).

Aside from the *Interim Rule* and the *Final Guidelines*, the government points to no other administrative act that would have timely created an obligation on Ross's part to comply with SORNA's mandate. This gap defeats the indictment.

\* \* \*

The ruling of the district court is reversed, and the judgment of conviction is vacated.

*So ordered.*

MILLETT, *Circuit Judge*, concurring in part, dissenting in part, and dissenting from the judgment: I join in full that portion of the opinion holding that the Attorney General lacked good cause to forgo notice and comment when issuing the Interim Rule, particularly given that he waited 217 days after the Sex Offender Registration and Notification Act ("SORNA"), 42 U.S.C. § 16901 *et seq.*, took effect to put that rule out. *See Applicability of the Sex Offender Registration and Notification Act*, 72 Fed. Reg. 8894-01 (Feb. 28, 2007) (codified at 28 C.F.R. pt. 72). I also agree that the error does not meet our high standard for harmlessness in this particular Administrative Procedure Act context. I accordingly agree that the Attorney General's Interim Rule did not lawfully "specify" how the provisions of SORNA apply to offenders like appellant Anthony Ross, whose offense preceded that law's enactment.

That is where my agreement with the majority opinion ends. Unlike the majority opinion, I would join every other circuit that has addressed the question and hold that the Attorney General's Final Guidelines adequately specified how and when SORNA would apply to pre-Act offenders, *see The National Guidelines for Sex Offender Registration and Notification*, 73 Fed. Reg. 38030 (July 2, 2008). *See also United States v. Manning*, 786 F.3d 684, 686–687 (8th Cir. 2015); *United States v. Newton*, 74 M.J. 69, 75 (C.A.A.F. 2015); *United States v. Lott*, 750 F.3d 214, 217–221 (2d Cir. 2014); *United States v. Whitlow*, 714 F.3d 41, 45–47 (1st Cir. 2013); *United States v. Stevenson*, 676 F.3d 557, 562–566 (6th Cir. 2012); *United States v. Valverde*, 628 F.3d 1159, 1160, 1163 (9th Cir. 2010).

In my view, the Final Guidelines suffice because they (i) explicitly announce SORNA's retroactive application, (ii) afford affected individuals clear notice of their retroactive registration obligations, (iii) spell out in detail how and when retroactivity will operate across divergent state systems, (iv) limit the requirements for participating jurisdictions to register

pre-Act offenders in specific circumstances determined by the Attorney General, and (v) express the Attorney General's independent response to and judgment about comments advocating against retroactivity. Any way you look at it, that constitutes "specifying" SORNA's retroactive reach. I accordingly would affirm the judgment of conviction in this case.

**A**

Congress was explicit that SORNA is meant to apply retroactively to pre-Act offenders. The Act defines a "sex offender" as "an individual who *was* convicted of a sex offense," 42 U.S.C. § 16911(1) (emphasis added), and thus "defines the term 'sex offender' as including these pre-Act offenders." *Reynolds v. United States*, 132 S. Ct. 975, 978 (2012) (quoting 42 U.S.C. § 16911(1)). And the general obligation to register applies to all such "sex offender[s]." 42 U.S.C. § 16913(a)(3); *id.* § 16917(a) & (b) (directing the Attorney General to "prescribe rules for the notification of sex offenders" who have already been sentenced or released from custody concerning their duty to register).

Indeed, the statute's avowed purpose is to establish "a *comprehensive* national system for the registration of [sex] offenders[.]" 42 U.S.C. § 16901 (emphasis added). The Supreme Court has "recognized that purpose," emphasizing that, "in general, the Act's criminal provisions apply to any pre-Act offender required to register under the Act who later travels interstate and fails to register." *Reynolds*, 132 S. Ct. at 982 (citing *Carr v. United States*, 560 U.S. 438, 445–448 (2010)); *see id.* ("The Act's history also reveals that many of its supporters placed considerable importance upon the registration of pre-Act offenders.") (citations omitted); *see also id.* at 986 (Scalia, J., dissenting) ("[R]egistration of pre-Act

offenders was (as the Court acknowledges) what the statute sought to achieve."). If that were not clear enough, Congress announced with moving specificity its desire to protect the public from those *past* offenders who had sexually assaulted seventeen victims identified by name in the Act, such as Jacob Wetterling, Elizabeth Smart, Megan Kanka, Amie Zyla, and Pam Lychner. 42 U.S.C. § 16901.[1]

However, Congress also recognized that retroactive implementation of SORNA's registration requirements was easier said than done, and thus that the Act could not practicably be retroactive immediately upon enactment. Indeed, the Supreme Court confirmed in *Reynolds* that Congress did not intend for SORNA to be *instantaneously* retroactive of its own force. *Reynolds*, 132 S. Ct. at 978, 983–984. Congress, though, did intend for SORNA to be *eventually* retroactive to the extent the Attorney General determined was "feasible," *Reynolds*, 132 S. Ct. at 981. *See id*. at 983 (rejecting "*instantaneous* registration" of pre-Act offenders, in favor of "implementation delay" while the Attorney General specified the timing and scope of retroactive operation); *id*. at 981 (noting Congress's recognition that "it might not prove feasible to" make SORNA retroactive "immediately"). Accordingly, SORNA tasked the Attorney General with (i) determining when, how, and to what extent SORNA's requirements could practicably be applied retroactively, and then (ii) putting into

---

[1] Highlighting the problem, both Amie Zyla's and Pam Lychner's assailants reoffended upon release. Amie Zyla's perpetrator was convicted of two counts of second-degree sexual assault of a child. *State v. Wade*, 2008 WI App 172, ¶ 1, 760 N.W.2d 183 (Wis. Ct. App. 2008). Pam Lychner's perpetrator was convicted of failing to register as a sex offender under Texas state law. *Kelley v. State*, 429 S.W.3d 865, 869 (Tex. Ct. App. 2014).

effect Congress's judgment that SORNA should apply to pre-enactment offenders where possible.

Delegating that job to the Attorney General made sense. SORNA's goal, after all, was to replace a patchwork of state and federal registration systems with uniform registration requirements and to enforce through federal criminal law the registration obligations of federal sex offenders and non-federal sex offenders who move across state lines. *See Reynolds*, 132 S. Ct. at 978. Recognizing the complexities that participating jurisdictions would confront in bringing their systems into conformity with new national standards, Congress afforded the participating jurisdictions a three-year timeframe (extendable by the Attorney General to five years) to bring their systems into compliance. 42 U.S.C. § 16924; *see also SORNA Extensions Granted*, U.S. DEP'T OF JUSTICE (Aug. 8, 2010) (the Attorney General granted extensions to 47 States, 7 territories, and 184 tribes), http://ojp.gov/smart/pdfs/SORNA_Extensions_Granted.pdf (last accessed Feb. 15, 2017).[2]

Given that state- and federal-law conglomeration and the inevitably varying dates by which jurisdictions would be able to conform their registration systems with SORNA, Congress tasked the Attorney General with resolving the "complexities, lacunae, and difficulties" pertaining to "whether, or how, the new registration requirements applied" to pre-Act offenders. *Reynolds*, 132 S. Ct. at 982. Congress, in other words, charged the Attorney General with making the rubber meet the road: the Attorney General had to figure out how and when SORNA's retroactivity purpose could realistically be put into

---

[2] SORNA applies to all fifty States, the District of Columbia, Guam, American Samoa, Puerto Rico, the Northern Marianas Islands, the U.S. Virgin Islands, and federally recognized Indian tribes. 42 U.S.C. § 16911(10). I use the term "State" to refer collectively to all of those covered jurisdictions.

effect while navigating a labyrinth of differing and evolving registration systems spanning dozens of jurisdictions and implicating multiple and varying categories of past offenders. That assignment to the Attorney General "efficiently resolve[d] what Congress may well have thought were practical problems arising when the Act sought to apply the new registration requirements to pre-Act offenders[,]" given the need "to make more uniform a patchwork of pre-existing state systems" and to "newly register[] or re-register[] a large number of pre-Act offenders." *See Reynolds*, 132 S. Ct. at 981 (internal quotation marks omitted).

The Attorney General's assignment also comported with SORNA's statutory design as a program of cooperative federalism. In the Act, Congress encouraged States, backed up by the offer of federal funding, to bring their own registration systems up to federally identified standards and to integrate their systems into a uniform national program that Congress concluded would more effectively monitor sex offenders once released. As a consequence of that statutory structure, attaining retroactive registration is heavily dependent on the type of records and registration obligations that each State has in place. That, in fact, is why SORNA's criminal prohibition for non-federal offenders like Ross is defined in terms of a knowing failure to register *under a state system*. *See* 18 U.S.C. § 2250(a) (making it a crime to "knowingly fail[] to register or update a registration" within a state system); 42 U.S.C. § 16913(a) ("A sex offender shall register, and keep the registration current, in each jurisdiction where the offender resides[.]").

While SORNA thus gives the Attorney General latitude to configure the statute's intended retroactive reach, the *Reynolds* Court was unanimous in concluding that the Attorney General's specification judgments were to be ones of timing,

scope, and logistical implementation: it would be entirely "unrealistic," the Court held, for the Attorney General to make a policy call against retroactive operation or to otherwise "refuse to apply the new requirements to pre-Act offenders" given the statute's explicitly retroactive text. *Reynolds*, 132 S. Ct. at 984; *see id.* at 986 (Scalia, J., dissenting) ("[I]t is simply implausible that the Attorney General was given discretion to determine whether coverage of pre-Act offenders (one of the purposes of the Act) should exist.").

To be clear, describing the Attorney General's job as one of timing, scope, and logistical implementation is not meant to understate the import of that assignment. As *Reynolds* held, Congress's delegation to the Attorney General meant that SORNA's registration requirements could not be applied to pre-Act offenders at all "until the Attorney General so specifies." 132 S. Ct. at 984. But in deciding whether the Attorney General has fulfilled that specification task, it is critical to remember that (i) the Attorney General was not charged with making a broad or categorical policy judgment about whether or not the statute should apply to pre-Act offenders; (ii) the range of his judgment in implementing the statute was at all times hemmed in by the statute's background directive that the registration obligation was designed to apply to pre-Act offenders eventually to the extent feasible; and (iii) the heart of retroactive operation—the establishment of registration processes with which past offenders would be expected to comply—largely had to take effect within the dozens of state and local registration systems with whom the Attorney General was coordinating.[3]

---

[3] This more calibrated understanding of the Attorney General's specification task as working out congressionally intended

7

**B**

In my view, the Final Guidelines accomplish that distinct task of "specify[ing]" when and how SORNA applies to which pre-Act offenders through more than fifty state and local registration systems.

First, as the Supreme Court has already observed, the Final Guidelines themselves—separate and apart from the statute—say explicitly that "the Act's requirements apply to 'all sex offenders,' including all preimplementation offenders." *Reynolds*, 132 S. Ct. at 983 (quoting 73 Fed. Reg. at 38036) (citation omitted). The Final Guidelines thus provide clear notice of the Attorney General's intended retroactivity for pre-Act offenders.

Second, the Attorney General made the independent decision in the Final Guidelines to narrow the States' obligations to register certain categories of pre-enactment

retroactivity over time also ameliorates to some extent the constitutional concerns that some have recognized might arise if SORNA were read to afford the Attorney General unfettered discretion to determine whether a criminal law applies at all to half a million people. *See Reynolds*, 132 S. Ct. at 986 (Scalia, J., dissenting); *United States v. Nichols*, 784 F.3d 666, 669–672 (10th Cir. 2015) (Gorsuch, J., dissenting from denial of rehearing en banc); *see generally Clark v. Martinez*, 543 U.S. 371, 380–381 (2005) ("[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail[.]"); *Michigan Gambling Opposition v. Kempthorne*, 525 F.3d 23, 33 (D.C. Cir. 2008) ("[T]he Supreme Court has 'giv[en] narrow constructions to statutory delegations that might otherwise be thought to be unconstitutional[.]'") (second alteration in original) (citations omitted).

offenders, stating that, "[w]hile SORNA's requirements apply to all sex offenders, regardless of when they were convicted," States could choose to forgo registering those sex offenders "who have fully left the system and merged into the general population at the time the jurisdiction implements SORNA, if they do not reoffend," without having their federal funding reduced. 73 Fed. Reg. at 38036. The Attorney General also determined that a State could, consistently with SORNA, "credit a sex offender with a pre-SORNA conviction with the time elapsed from his release (or the time elapsed from sentencing, in case of a nonincarcerative sentence) in determining what, if any, remaining registration time is required." *Id.* Consequently, "[i]n such cases, a jurisdiction * * * does not have to require the sex offender to register on the basis of the conviction, even if the criteria for retroactive application of the SORNA standards * * * are otherwise satisfied." *Id.* at 38047.

By narrowing the States' requirements to register pre-Act offenders, the Attorney General expressly acknowledged that "specific provisions of the guidelines relating to 'retroactivity' incorporate some features that may limit their effect on sex offenders with older convictions." 73 Fed. Reg. at 38036. In so doing, the Attorney General identified—that is, specified—the potential implications of his decisions with respect to retroactive coverage for pre-Act offenders. *See* 73 Fed. Reg. at 38036; *id.* (noting that, to the extent jurisdictions choose to incorporate the exceptions, "the effect of retroactive application on sex offenders with pre-SORNA convictions may be further reduced"). And doing so made sense. For a sex offender only violates SORNA if he or she "knowingly" fails to register within a designated jurisdiction. 18 U.S.C. § 2250(a); *see* 42 U.S.C. § 16913(a). For non-federal offenders like Ross, SORNA tasks the States with identifying such sex offenders, notifying them of their obligation to register, and

obtaining written acknowledgment that such sex offenders understand their obligations. 42 U.S.C. § 16917(a); 73 Fed. Reg. at 38063–38064. Accordingly, if a jurisdiction is not obliged to and chooses not to identify, notify, or register those pre-Act offenders, any federal prosecution of such pre-Act offenders would risk foundering upon the "knowing" element of the offense, and perhaps also on SORNA's affirmative defense for offenders for whom registration was infeasible due to circumstances beyond their control, 18 U.S.C. § 2250(c). *See also Kennedy v. Allera*, 612 F.3d 261, 269 (4th Cir. 2010) ("Indeed, the criminal provisions of SORNA also recognize that a State can refuse registration inasmuch as they allow, as an affirmative defense to a prosecution, the claim that 'uncontrollable circumstances prevented the individual from complying.'") (citation omitted).[4]

The majority opinion highlights convictions for failing to register prior to a jurisdiction's implementation of SORNA in which SORNA's *mens rea* requirement nevertheless was met. Op. 12. I do not disagree with the view that a sex offender's duty to register and a jurisdiction's implementation of SORNA are not always coextensive. But whether sex offenders generally have a legal duty to register prior to SORNA's implementation in a particular jurisdiction is of little relevance to the inquiry into whether the Attorney General, while making explicit the general retroactive reach of SORNA to pre-Act offenders in the Final Guidelines, also intended to specify potential limitations on those retroactive consequences. The Attorney General plainly stated that his Guidelines "may limit

---

[4] In this case, while the District of Columbia had not yet implemented SORNA at the time of Ross's arrest for failing to register, the District had informed and obtained written acknowledgment that Ross understood his registration requirements under D.C. law when Ross was convicted of a sex offense in 1999. *See United States v. Ross*, 778 F. Supp. 2d 13, 15 (D.D.C. 2011).

their effect" on certain pre-Act offenders. 73 Fed. Reg. at 38036. I take the Attorney General to have meant what he said. After all, as the majority opinion correctly notes, "the issue here is what the Attorney General *said* he was doing[.]" Op. 14.

## C

In holding that no valid specification occurred, the majority opinion relies on *Prill v. NLRB*, 755 F.2d 941 (D.C. Cir. 1985), which held that an agency commits reversible error when it deems mandated by law a decision over which it actually has discretion, *id*. at 948. The majority opinion reasons that the Attorney General mistakenly "disclaimed any authority to decide for himself whether SORNA applied to pre-enactment offenders." Op. 9.

But the Attorney General was certainly correct that Congress itself had decided that SORNA should be retroactively applicable to pre-enactment offenders to the extent feasible. *See Reynolds*, 132 S. Ct. at 984. That is why the Supreme Court in *Reynolds* backhanded the suggestion that the Attorney General had the discretion to "refuse to apply the new requirements to pre-Act offenders." *Id*. The Supreme Court, in fact, labeled an "unrealistic possibility," *id*., the very retroactivity judgment that the majority opinion faults the Final Guidelines for not making.

The Attorney General's assignment instead was, in the statute's words, to "specify"—to state precisely or in detail—when, how, and for whom such retroactivity could eventually and practicably be accomplished across dozens of different registration systems. Indeed, Congress's selection of the verb "specify"—rather than something more empowering like "decide" or "determine"—underscores that the Attorney General's task was one of figuring out and then explaining how

and when to make retroactivity work to the extent possible. After all, to specify means simply to "tell or state precisely or in detail." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2187 (2002). By its plain meaning, "specify" does not charge the Attorney General with undertaking in the first instance an overarching policy call about whether SORNA should or should not apply to pre-Act offenders.[5]

The Attorney General plainly recognized his authority in that specific respect. The "*guidelines* require the application by a jurisdiction of SORNA's requirements to sex offenders convicted prior to the enactment of SORNA or its implementation in the jurisdiction[.]" 73 Fed. Reg. at 38035 (emphasis added). That clear and explicit statement put pre-SORNA offenders on plain notice of their retroactive duty to register on pain of criminal penalty. *See Reynolds*, 132 S. Ct. at 983. In addition, the Final Guidelines provide that SORNA does not require States to register past offenders who had already left the state registration system or those for whom sufficient time had already been credited by the State. 73 Fed. Reg. at 38036, 38047. Nothing in SORNA commanded those precise exceptions; the Attorney General independently made that judgment and laid it out in the Final Guidelines, and acknowledged the practical effect doing so could have on the pre-Act offenders themselves. *Id.* at 38036.

On top of that, the Attorney General invited and then specifically addressed public comments on retroactivity,

---

[5] *See also* THE NEW OXFORD AMERICAN DICTIONARY 1629 (2005) ("specify" means to "identify clearly and definitely" and "state a fact or requirement clearly and precisely"); CAMBRIDGE ENGLISH DICTIONARY ONLINE (to "specify" is "to state or describe something clearly and exactly"), http://dictionary.cambridge.org/us/dictionary /english /specify (last accessed Feb. 15, 2017).

independently rejecting the argument that retroactive application "adversely affect[s] sex offenders[.]"  73 Fed. Reg. at 38035.  The Attorney General explained *his view* that "the effects of SORNA's registration and notification requirements on sex offenders are much the same regardless of whether their sex offense convictions occurred before or after SORNA's enactment or its implementation in a particular jurisdiction[,]" and that "the public safety concerns presented by sex offenders are much the same, regardless of when they were convicted." *Id*. at 38035–38036.

Further, after acknowledging the overarching "legislative judgment" that the burdens of registration and notification requirements "are justified by the resulting benefits in promoting public safety[,]" the Attorney General added that "in any event" his "objective [was] to 'interpret and implement' SORNA's standards, *see* SORNA § 112(b), not to second-guess the legislative policies they embody."  73 Fed. Reg. at 38036.  The Attorney General's use of the phrase "in any event" marries together his just-articulated independent judgment about the public-safety need for retroactive operation with Congress's background retroactivity "policies."  Indeed, the very next sentence explains how "specific provisions of the *guidelines*"—not of SORNA—"may limit their effect on sex offenders with older convictions."  *Id.* (emphasis added).  The Attorney General, in other words, went further than just "hedg[ing]" his bets about SORNA's statutory retroactivity, as the majority acknowledges he did in the Interim Rule.  Op. 4.  Building on that foundation, the Attorney General spelled out his own independent judgment about how his announced intentions regarding retroactive enforcement served the public interest.

Beyond that, it was eminently reasonable for the Attorney General to take Congress's retroactivity direction as his

guidepost, for "court and agency alike are bound to respect and obey Congress's intent." *Continental Air Lines, Inc. v. Department of Transportation*, 843 F.2d 1444, 1454 (D.C. Cir. 1988). That is, the Attorney General did not fail to acknowledge and exercise his discretion with respect to retroactivity. Rather, the Attorney General acknowledged and exercised his cabined specification authority in a manner informed by legislative intent, textual direction, and statutory purpose.

For those reasons, the more relevant case here, in my view, is *Chemical Waste Management, Inc., v. United States Environmental Protection Agency*, 869 F.2d 1526 (D.C. Cir. 1989). There, we upheld an agency's rule that made retroactive a provision of the Resource Recovery and Conservation Act of 1976, 42 U.S.C. § 6901 *et seq.* (1988), despite the fact that the agency's proposed rule "appeared to treat [retroactivity] as an accomplished fact[,]" and "assume[d] rather than invite[d] comments on this issue." *Chemical Waste Mgmt.*, 869 F.2d at 1535. We did so because the agency "received numerous comments on this question[,]" "extensively discussed the objections it had received, and * * * cogently explained its reasons[.]" *Id.*

So too here. Notwithstanding the Attorney General's understanding of Congress's retroactivity command, he "received numerous comments" on retroactivity, "discussed" those comments, and "cogently explained" his reasons for concluding that SORNA's registration requirements should apply to pre-Act offenders, as well as his reasons for narrowing SORNA's retroactive obligations in certain respects. *See, e.g.*, 73 Fed Reg. at 38035–38036.

**D**

The difference in views between the majority opinion and me on this thorny question is understandable. SORNA retroactivity is a unique construct: Congress wrote the law in plainly retroactive terms that (as the Supreme Court acknowledged) the Attorney General could not realistically alter. But then Congress also charged the Attorney General with putting its purpose into practice—with figuring out how retroactivity could work for which offenders and when across myriad registration systems.

While I thus understand the genesis of the majority's disposition, I cannot join it. I fear the majority opinion overreads the Attorney General's duty to "specify," treating it as a policy judgment of the type at issue in *Prill*, even though the Supreme Court eschewed such an understanding of the Attorney General's role in *Reynolds*, 132 S. Ct. at 984. My reading of SORNA, in light of *Reynolds*, is that specification is instead an implementation task of providing pre-Act offenders clear notice and discerning and explicitly articulating how, when, and for whom retroactivity can feasibly be accomplished across all of the participating systems, consistently with Congress's Spending Clause design.

The consequences of the majority opinion's disposition, moreover, are potentially severe and far-reaching. If SORNA and our precedent demand that the Attorney General must go beyond the Final Guidelines and explicitly acknowledge and exercise an independent power "to decide for himself whether SORNA applie[s] to pre-enactment offenders[,]" Op. 9, then SORNA may still not have any retroactive reach more than a decade after its enactment and after repeated regulatory rounds. That is because nothing in the later-issued 2010 regulations (which also predated *Reynolds*) recognizes or purports to make the substantive discretionary judgment the majority opinion would require, at least not in a way that materially differs from

the Final Guidelines. *See generally Applicability of the Sex Offender Registration and Notification Act*, 75 Fed. Reg. 81849-01 (Dec. 29, 2010) (codified at 28 C.F.R. pt. 72).

To the contrary, as the majority opinion admits, the open and announced position of the Attorney General and the United States government was, until the *Reynolds* decision in 2012, that SORNA was retroactive upon enactment. *See* Op. 9 ("Acting before the *Reynolds* decision, he took the view that SORNA *had applied* to pre-SORNA offenders ever since its enactment."); *Reynolds*, 132 S. Ct. at 979 (noting that the government's view was that a sex offender who failed to register *before* the Interim Rule was promulgated was in violation of SORNA's registration requirements).

The Final Rule bears that view out. The Attorney General was explicit that "federal registration obligations on sex offenders have been in force since the *enactment* of SORNA." 75 Fed. Reg. at 81850 (emphasis added). The Attorney General then went out of his way to distance his Final Rule from a court decision suggesting that SORNA required independent regulatory action to operate retroactively, emphasizing that "this publication does not reflect agreement with the conclusion[] * * * that SORNA does not apply retroactively of its own force." *Id.* That sure sounds like "the agency disavow[ed]" the very discretion that the majority opinion says that it had to exercise. Op. 9.

To be sure, as the majority opinion notes, the Attorney General later said that "Congress at the very least placed it within the Attorney General's discretion to apply SORNA's requirements to sex offenders with pre-SORNA convictions if he determines (as he has) that the public benefits of doing so outweigh any adverse effects." 75 Fed. Reg. at 81850.

But if that parenthetical "as he has" is all the discretionary reasoning that *Prill* requires, the government should win this case. That is because the Attorney General undertook that same independent weighing of the costs and benefits of registration in the Final Guidelines, albeit without parentheses. In responding to commenters in the Final Guidelines, the Attorney General reasoned that "the effects of SORNA's registration and notification requirements on sex offenders are much the same regardless of whether their sex offense convictions occurred before or after SORNA's enactment or its implementation in a particular jurisdiction," and "the public safety concerns presented by sex offenders are much the same, regardless of when they were convicted." 73 Fed. Reg. at 38035–38036.

The Attorney General's "at the very least" likewise seems far too agnostic and fleeting an aside to reflect any genuine recognition of and exercise by the Attorney General of discretion *ala Prill*. That is particularly true given the Attorney General's official statements bookending that language that emphatically declared that SORNA took the retroactivity decision out of his hands because it was fully retroactive of its own force upon enactment. Indeed, the Attorney General reiterated in the Final Rule, much as he did in the Final Guidelines, that any discretion he had was hemmed in by Congress's "legislative judgment" that SORNA should apply to all sex offenders. *See* 75 Fed. Reg. at 81852 ("Congress's enactment of SORNA reflects a general legislative judgment that the public safety benefits of SORNA's requirements outweigh any adverse effects."). Thus if the Final Rule suffices, so should the Final Guidelines.

In addition, the Attorney General's announced position on behalf of the United States in the *Reynolds* litigation was explicit that retroactivity was not his call. *See* Brief for the

United States, *Reynolds v. United States*, 2011 WL 2533008, at \*13 (June 23, 2011) ("Petitioner's duty to register as a sex offender under SORNA arises directly from the statute itself."); *id.* ("Those [registration] requirements became effective on the date of SORNA's enactment."); *id.* at \*15 ("[P]etitioner's federal duty to register and update his registration \* \* \* arises from the statute itself[.]"); *id.* at \*18 ("The federal directive to those sex offenders went into effect on the date of SORNA's enactment[.]"). On top of that, the Attorney General told the Supreme Court that all his Final Rule did was "confirm that SORNA's requirements mean what they say, *i.e.*, they apply to all sex offenders." *Id.* at \*31–\*32.

Given all that, it would be passing strange to say that the Attorney General somehow consciously exercised his discretion to make a policy judgment about SORNA's retroactive application *vel non* in the 2010 Final Rule. The logical consequence of the majority opinion's requirement that the Attorney General must go beyond specifying how and when retroactivity can come into effect, and must instead decide for himself whether SORNA applied to pre-enactment offenders at all, is that the Attorney General had to believe he had some choice in that policy matter. And as the Attorney General was not disabused of his belief that SORNA was retroactive upon enactment until the Supreme Court told him so in 2012, such recognition could not have occurred at the time he promulgated the 2010 Final Rule.

In any event, the at-least two year delay in retroactivity that the majority opinion would impose by itself could call into question hundreds of convictions.[6] And the majority opinion

---

[6] Between 2008 and 2010, nearly six hundred sex offenders were convicted for failing to register under SORNA. *See Sex Offender Registration and Notification Act: Jurisdictions Face Challenges to*

inflicts that cost by, in my view, overreading the scope of the Attorney General's specification authority, and mistakenly counting for naught the Attorney General's (i) repeated and explicit statements that SORNA applies to pre-Act offenders, (ii) explanation of how retroactivity will work across the varied registration systems, (iii) exercise of his statutory authority to cabin States' obligations to register pre-Act offenders in specified circumstances, while noting its attendant impact on pre-Act offenders, and (iv) articulation of his own reasons for sharing Congress's judgment as to the importance of such retroactive coverage in 2008. Those statements by the Attorney General constitute "specify[ing]" in the plainest sense of the term. Accordingly, I respectfully dissent.

---

*Implementing the Act, and Stakeholders Report Positive and Negative Effects*, U.S. GOV'T ACCOUNTABILITY OFFICE, GAO-13-211, 54 (Feb. 7, 2013), http://www.gao.gov/assets/660/652032.pdf (last accessed Feb. 15, 2017). Given the time it generally takes to investigate, arrest, prosecute, incarcerate, and release a sex offender and commence his registration obligation, it stands to reason that a substantial number of those offenses predated SORNA's enactment.